ROBERT L. DEMAREST and Others, Appellants, *v.* WESTCHESTER FIRE INSURANCE COMPANY OF NEW YORK and Others, Respondents.

First Department, Februrary 11, 1932.

*William Otis Badger* of counsel [*Alfred L. Pitts* with him on the brief; *William Otis Badger*, attorney], for the appellants.

*Frederick T. Case*, for the respondents.

SHERMAN, J.  A fire loss was sustained on Sunday night, July 10, 1927, by a corporation, John E. C. Chambers, Inc., and this action is brought by plaintiffs, its assignees, constituting a committee acting for the benefit of its unpaid creditors, to enforce the liability of the insurers under standard form policies.  The complaint asserted losses of $124,552.04 on stock, $49,820.82 on profits, and $6,957.47 on fixtures, totalling $181,330.33.  After a lengthy trial the jury found in favor of the plaintiffs in the total sum of $104,000, whereupon the trial justice, who had reserved decision upon defendants' motion to dismiss the complaint, entered an order setting aside the verdict as unsupported by the evidence and for lack of sufficient evidence of damage and because of conclusive evidence of fraud, and directed that the complaint be dismissed upon the merits and judgment entered in favor of defendants. From that order and the judgment which followed, this appeal has been taken.

The business carried on by the insured under the direction of

Oliver F. Chambers was the wholesale and retail sale of handkerchiefs. It had not been successful and appears to have lost money for a period of years. During 1925 and 1926 it made no profit whatsoever. It paid only meager salaries to its officers. At the end of each of the years 1924, 1925 and 1926 its inventories reflected stock on hand valued between $23,000 and $36,000. In the early part of the year 1927 $30,000 of insurance was carried on the stock. In May, 1927, additional insurance of $40,000 was placed on the merchandise on hand, which was then further increased in the first week of June by an additional coverage of $50,000, and on July sixth, four days before the fire, $60,000 additional insurance was placed upon the stock. Thus in about two months preceding the fire the insurance upon stock on hand was increased from $30,000 to $180,000. Likewise the coverage upon fixtures, which at the beginning of the year amounted to $3,200, was increased in May and further on July eighth, two days before the fire, so that it came to aggregate a total of $9,800. Though the business had not shown any profits and the insured had never theretofore carried any insurance against loss of profits, in June the corporation took out $50,000 insurance against the loss of profits and on July 6, 1927, increased it by an additional $40,000 of like insurance.

In the proof of loss plaintiff claimed that the sound value of the insured property was upwards of $140,000 and that the loss thereon was $124,552.04. After the fire Mr. Chambers informed the adjuster of the insurance company that the stock had a value of about $175,000 to $180,000, and that the stock on hand on January 1, 1927, had been $61,000.

By way of explanation that the stock on hand on January 1, 1927, amounted to $61,000 (when the merchandise inventory taken on December 31, 1926, showed less than $36,000) the insured claimed that in May, 1927, there had been found in the office safe a sheet which had become separated from that inventory and which added thereto the sum of $25,462.49, covering a section of the business known as " Department B," and that before the discovery of this missing sheet the inventory of stock in that department had been shown to be $7,344.84. It, however, appeared that at the beginning of the year 1926 the goods on hand in that department had been valued at $4,642.27, and the purchases of that department throughout that entire year amounted to $26,191.01, making the total $30,833, out of which had been taken enough merchandise to take care of sales of approximately $32,000. Obviously the insured could not have started the year 1927 with merchandise in that department amounting to $32,807, as claimed by the insured. There could not have been on hand on January 1, 1927, the quantity

of merchandise claimed. It became necessary to show large purchases during the succeeding six months whereby the stock of merchandise was greatly augmented. The purchase journal in which purchases were entered had not been placed in the safe with other books and had been destroyed by the fire.

Mr. Chambers verified by his own signature the list of various bills prepared by the insured's adjusters, which were tendered to show such purchases after January 1, 1927. Without detailing the evidence, both documentary and drawn from the lips of vendors with whom it dealt, it appeared conclusively that many of these bills purporting to come from such vendors were altered and the amounts set forth upon these bills, as well as items thereof, were changed so as to evidence the sale of larger quantities of merchandise than had actually been purchased. Several sellers of goods, disinterested witnesses, were called by defendants. An expert gave evidence that the alterations of bills coming from various mercantile establishments had all been made by the same typewriter, which was in the possession of one of the employees of the assured. This corroborated those sellers who denied the accuracy of the bills presented by the insured in support of its proof of loss, and tended to show that the fraudulent acts were done on the premises of the assured and by its servant.

Some of the vendors had declined to give information to the insurance company without a writing from their customer, and Mr. Chambers refused to sign a written request so that the information might have been available during his examination which was being conducted under the terms of the policy before trial by defendant's 'attorneys. He declined to answer questions and obstructed that examination. It likewise appeared that certain of the merchandise claimed to have been damaged or destroyed in the fire had either not been ordered or was not delivered until after the fire had taken place.

By way of explanation as to why the insured had increased its insurance and had added so enormously to its stock of merchandise during the several months immediately preceding the fire, Mr. Chambers presented what was on its face a summary of a number of " open orders " for merchandise taken by salesmen for future delivery, which, it was claimed, presaged a huge increase in business during the latter part of the year 1927, but the proof at trial demonstrated that the list did not consist of orders actually obtained. It, however, gave the name of each so-called customer and set out opposite his name the precise amount in dollars and cents of each advance and unfilled order so taken. If true, it supported the assured's good faith; if false, it was clearly designed

to mislead. At trial the list was not substantiated. Defendant presented the testimony of several whose names appeared on that paper but who had entered no orders with the assured. The salesmen said to have taken these orders were not called to substantiate this claim, and the plaintiffs seem now to urge that they were estimates and rather the expression of hope than a list of actual orders. But this suggestion is not convincing, for these disproved " orders " were not in round numbers; the particular items gave exact figures of each specific order, such as $247.95, $1,000.37, $3,999.50.

The defense, asserted at trial, was foreshadowed in the preliminary examination of Mr. Chambers and set forth in the answer, so that plaintiffs had ample opportunity to prepare to meet it with proof. Upon the trial this proof of fraud remained virtually undisputed and the position taken by Mr. Chambers appears to be that he personally did not know of the false inventories, altered bills and fraudulent papers and that they were either the work of over-zealous subordinates, or that some alterations were made by the attorney of the insurance company while possessed of some of these bills, that assertion being put forward in spite of the fact that the list which contained these altered bills and their increased amounts was certified to as correct by Mr. Chambers after the list had been made out by the adjuster employed by the insured.

Likewise there was no proper proof made of the extent of damages in this case, beyond such as is claimed to have appeared upon the face of the proof of loss which was said to be in accord with the books of the insured. Plaintiffs, however, refrained from giving proof that those books were correct. They could not have been correct in view of the evidence of falsified bills for merchandise purchased shown in the evidence. Without proof as to the value of the salvaged merchandise or as to what was realized from the quantity that was saved, there was no adequate proof of damage.

These charges of falsity with respect to the amount of merchandise purchased, the dates of delivery and the alleged orders taken were specific and might have been contradicted by plaintiffs. Instead, an inventory taken by Mr. Chambers and completed a few days before the fire, in which appeared prices, not as theretofore at cost, but at what the insured claimed to be replacement values, was produced; proof was made of purchases of merchandise from a few firms in June, 1927, which exceeded those made from the same firm in prior months. Arguments based upon this evidence and upon Mr. Chambers' claims that he personally knew nothing about the altered bills and fraudulent practices, were advanced to over-

come the definite proof contained in the record. That will not suffice.

We are aware that the fraud on the part of the insured was pleaded by defendant and that upon it rested the burden of proof to establish the fraud. It is asserted that, therefore, that question was for the jury and could not be disposed of by the trial court, because Mr. Chambers, shielding himself by a plea of personal ignorance, did not admit he had taken any part in their perpetration and asserted that whatever had been done by employees of the assured was without his knowledge or approval. But the proofs so devised were used by the assured and tendered in compliance with the policy requirement.

Where the evidence is clear and convincing as to the perpetration of the fraud, and there is really no countervailing proof, the court is not to stultify itself by holding that there was any real issue in this case, which requires submission to another jury. Any verdict in favor of plaintiff, in view of the evidence presented in this record, would rightfully be set aside by the trial court. No scintilla of exonerating evidence to contradict the proof of fraud, which is largely documentary and comes from disinterested sources, is pointed out in the record. The defense having been clearly established, there is no occasion for a further trial which can only result in the same final determination.

The judgment dismissing the complaint upon the merits (and even if it had been a mere dismissal without the words " upon the merits," Civ. Prac. Act, § 482) is a bar to the maintenance of any further action upon the policy and, therefore, has the same effect as though the defendant had moved for a direction of the verdict in its favor.

Upon the facts in this record, had the trial court erroneously refused to direct a verdict in favor of defendant, this court would have been required, upon appeal (Civ. Prac. Act, § 584), to make such disposition of this case.

The judgment and order appealed from should be affirmed, with costs.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Judgment and order affirmed, with costs.