**Melville HARRIS, as Trustee in Bankruptcy of Leonard Massello and William Massello, Plaintiff,**

v.

**STANDARD ACCIDENT AND INSURANCE COMPANY, Defendant.**

United States District Court
S. D. New York.
Feb. 10, 1961.

Robert Liederman, New York City, for plaintiff, by John J. Tullman, New York City, of counsel.

Reid A. Curtis, Merrick, N. Y., for defendant, by James B. McLaughlin, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Plaintiff, the trustee in bankruptcy of Leonard and William Massello, brings this action to recover damages for defendant's refusal, allegedly in bad faith, to settle a personal injury action brought against the Massellos, within the limits of a liability insurance policy issued by the defendant to Leonard Massello.

### I.

This action stems from an automobile accident which occurred on January 5, 1952, when a panel truck owned by Leonard Massello and driven by William Massello collided with a taxicab at the intersection of Palisade Avenue and Shonnard Place in Yonkers. As a result of the collision, the taxicab was forced onto the sidewalk, where it struck a passing pedestrian, Mrs. Elizabeth Pease Van Suetendael, causing her serious injuries. Mrs. Van Suetendael then instituted suit in the New York Supreme Court, Westchester County, against the owners and drivers of both vehicles, to recover damages for these injuries.[1]

Pursuant to the terms of the automobile liability insurance policy issued by the defendant to Leonard Massello, Standard Accident and Insurance Company assumed the defense of the action on behalf of the Massellos. The coverage under this policy was limited to $10,000 for any one person injured in any one accident.

Settlement discussions were had in the State court action prior to the trial in pre-trial conferences, and during the course of the actual trial. However, no agreement could be reached, and after a trial in the month of March, 1957, before Justice George Fanelli of the Supreme Court and a jury, a verdict awarding $105,000 damages for the plaintiff, individually and as executrix, against all defendants, was returned, and judgment was entered thereon. Subsequently, Standard paid Mrs. Van Suetendael the sum of $10,000, the limit of its policy, and Travelers Insurance Company paid, on behalf of the taxicab owner, the sum of $5,000, the limit of its policy. The taxicab owner personally paid an additional $1,000, and received a release of the lien of the judgment against him. Thus, the sum of $89,000 remains due upon the judgment.

Meanwhile, subsequent to the judgment in the personal injury action, the Massellos filed petitions in bankruptcy in the United States District Court for this district, and were adjudicated bankrupts. On September 13, 1957, plaintiff was appointed trustee in bankruptcy. The bankruptcy proceedings have remained open, pending the outcome of this action.

### II.

Plaintiff's case is premised on the contention that defendant's refusal to settle was in bad faith, a theory of liability that is recognized in New York, Best Building Co. v. Employers' Liability Assurance Corp., 1928, 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464, as well as in most other jurisdictions. See, e. g., Tennessee Farmers Mutual Ins. Co. v. Wood, 6 Cir., 1960, 277 F.2d 21; Henke v. Iowa Home Mutual Casualty Co., 1959, 250 Iowa 1123, 97 N.W.2d 168; Comunale v. Traders & General Insurance Co., 1958, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883. See generally Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954).[2]

---

1. Mrs. Van Suetendael's husband joined in the action, claiming damages for loss of services and medical expenses. Prior to the trial, the husband died, and Mrs. Van Suetendael, as executrix of his estate, was substituted as plaintiff in his place.

2. Some jurisdictions require the insurer to meet a more stringent standard in determining whether to settle. In these jurisdictions, the insurer will be liable to the insured if the refusal to settle was the result of negligence, or the failure to exercise ordinary care. See, e. g. Dumas

The necessity for a principle of liability in this area stems from the fact that under the terms of the ordinary liability insurance policy, the insurer has the duty of defending actions brought against the insured within the scope of the policy. This duty confers upon the company the exclusive control over all decisions concerning settlement. In making these decisions, the company, since it is, in actuality, representing both itself and its insured, is faced at times with the reconciliation of inevitably conflicting interests. For example, a settlement within the limits of the policy coverage would generally be advantageous to the insured, since he would then not be subject to any excess personal liability. On the other hand, it would often be desirable for the company to proceed to trial, and seek to avoid liability, particularly where its risks are limited by the policy coverage to a relatively small sum. This, however, would often expose the insured to the possibility of a substantial personal liability.

■ Since the company, therefore, has power, through the control of settlement, to adversely affect the insured's interests, it must necessarily bear a legal responsibility for the proper exercise of that power. Thus, the law imposes upon the insurer the obligation of good faith— basically, the duty to consider, in good faith, the insured's interests as well as its own when making decisions as to settlement.

Bad faith—the failure to comply with this obligation—is generally proven by evidence largely circumstantial in nature. It is most readily inferable when the severity of the plaintiff's injuries is such that any verdict against the insured is likely to be greatly in excess of the policy limits, and further when the facts in the case indicate that a defendant's verdict on the issue of liability is doubtful.

See, e. g., Tennessee Farmers Mutual Ins. Co. v. Wood, 6 Cir., 1960, 277 F.2d 21; Henke v. Iowa Home Mutual Casualty Co., 1959, 250 Iowa 1123, 97 N.W.2d 168. When these two factors coincide, and the company still refuses to settle, the inference of bad faith is strong.

In the instant case, the defendant contends that it exercised good faith throughout; that it determined to proceed to trial because of a bona-fide belief that liability could be avoided. The company further seeks to excuse its failure to settle on the theory that, since it knew the Massellos were insolvent, it was not exposing them to any substantial risk in proceeding to trial.

An examination of the evidence introduced at the instant trial indicates conclusively, however, that the defendant company, and its attorney, failed to give adequate consideration to the interests of the Massellos. Not only did the objective criteria—the severity of the injuries and the probability of a plaintiff's verdict—coincide, but statements made by defendant's trial attorney during the course of the personal-injury action clearly illustrate the bad-faith approach by the company to the defense of that action.

### III.

Several witnesses were called by the trustee in the trial before this court to substantiate his version of the facts. Justice Fanelli, one of these witnesses, testified that a settlement conference was held before him at the time of the selection of the jury and that at least one more such conference was held during the course of the trial. He testified:

that at the first conference, Mr. William A. Hyman, representing Mrs. Van Suetendael, outlined the essentials of his case to the judge and to the attorneys for the defendants;

v. Hartford Accident & Indemnity Co., 1947, 94 N.H. 484, 56 A.2d 57. New York, however, allows liability only if bad faith toward the insured is shown. See Best Building Co. v. Employers' Lia-

bility Assurance Corp., 1928, 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464; Garcia & Diaz, Inc. v. Liberty Mutual Ins. Co., Sup.1955, 147 N.Y.S.2d 306.

that Hyman emphasized, through the bill of particulars, the severity of the plaintiff's injuries;

that Hyman further noted the inconsistencies in testimony given by William Massello in his examination before trial and in a Motor Vehicle Bureau hearing;[3] that Hyman indicated that he had available a disinterested eyewitness who would give testimony which would be very damaging to the Massellos;

that he (Justice Fanelli) during this pretrial conference indicated his belief that both defendants would be held liable, and that the defendants could not win the case;

that he, therefore, recommended a settlement to all parties;

that Mr. James O. Denniston, the attorney representing the Travelers Insurance Company, agreed that all defendants were liable, and offered to contribute the full amount of Travelers' policy coverage, $5,000, towards a settlement;

that he (Justice Fanelli) inquired of Standard's counsel as to his position;

that Standard's counsel replied that he would only match the Travelers' contribution;

that he (Justice Fanelli) again expressed his opinion that the defendants could not win the case;

and that Standard's counsel replied that he knew he couldn't win, but that he had no authority to contribute any more than Travelers.[4]

(See Record, pp. 5–12).
Justice Fanelli further testified:

that at the second settlement conference held before him, he again told Standard's counsel that he did not believe the defendants could win the case;

that he further indicated that Mr. Hyman was now willing to settle for a sum below the combined policy limits, and thus that Standard would be able to save a small amount on its policy coverage;

that Standard's position, however, remained unaltered;

and that its attorney repeated that he had no authority to contribute any more than was contributed by the Travelers Insurance Company—$5,000. (Record, pp. 12–14).

The testimony of Justice Fanelli with respect to these incidents was fully corroborated by testimony given by Mr. Denniston and Mr. Hyman. (Record, pp. 48–59, 97–99, 101–04).[5]

---

3. These inconsistencies were such as to create some doubt as to Massello's credibility. In a hearing before the Motor Vehicle Bureau, Massello testified that the taxicab driver had turned his steering wheel to the right, and that the rear of the taxi skidded to the left and struck the right front bumper of the panel truck. Subsequently, in his examination before trial, Massello testified that the taxi made a sharp left turn, and that the left side of the taxi struck the left front bumper of the truck. There were, in addition, other minor discrepancies in Massello's testimony.

4. Standard's attorney testified at this trial that he never made any statements indicating his belief that the Massellos would be held liable, and that in fact he believed that the case could be won. However, Justice Fanelli, a witness with no interest in the outcome of this litigation, testified unequivocally that the attorney did state that he knew he couldn't win the case. This testimony was corroborated by Mr. Hyman. Mr. Denniston, a witness without any interest in this litigation also confirmed this. Upon hearing the witnesses, and observing their demeanor, I conclude that the evidence given by the witnesses called by the plaintiff is more persuasive.

5. Mr. Hyman also testified as to a conversation with Standard's attorney during the course of the trial. He testified: that Standard's counsel asked Mr. Hyman whether he would be satisfied with a $5,000 contribution from Standard; that when he refused, and asked Standard's attorney whether he would reconsider the suggestion made by Justice Fanelli, the attorney again reiterated that he would only match Travelers' contribution; and that Standard's attorney further said that under the circumstances, "we will have to finish this trial, we've got nothing to lose." (Record, pp. 60–61).

The attorney for Standard maintained his position throughout the course of the trial of the negligence action, and reiterated it several times in discussions with Mr. Denniston and Mr. Hyman. Even after the "disinterested" witness mentioned by Mr. Hyman testified, giving testimony strongly indicating that the Massellos were liable, Standard refused to alter its position with regard to settlement.

This attitude of intransigence and the failure to understand its responsibility to the insured, was evident even before the trial. Thus, Mr. Hyman testified to a meeting with Mr. George Wadkinson, the supervisor of defendant's Liability Claim Department, approximately one year before the trial. At this time, according to Mr. Hyman's testimony, Mr. Wadkinson told Mr. Hyman that, with respect to settlement of the case, Standard would only match the contribution of Travelers. (Record, pp. 71–72). Further, Mr. Harris, the trustee, testified as to pre-trial proceedings held in April of 1956. At that time, Official Referee Schmidt, a former Supreme Court Justice, recommended that the case be settled, with a slight saving to each insurance company on its policy coverage. Travelers' representative indicated that he would pay $4,500; the

defendant's representative then said that he had no authority other than to meet Travelers' contribution. (Record, pp. 125–29). Thus, the early pre-trial negotiations ultimately were unsuccessful.

IV.

The defendant's arbitrary equation, throughout the case, of the amount it was willing to pay with that offered by the Travelers Insurance Company, despite factual distinctions and differences in policy coverage, cannot conceivably be reconciled with a good-faith consideration of the interests of the insured. Certainly, there can be no rational correlation between the insured's interests and potential liabilities, and the amount offered by another insurance company with a different policy coverage. Standard acted throughout as if the matter of prime importance was not to pay one penny more than Travelers towards the settlement, and this obsession apparently blinded it to its correlative obligation to the insured.[6] Furthermore, it seems clear throughout, that the defendant knew that its chances of success on the issue of liability were minimal.[7] In addition, Standard's attorney admitted that Mrs. Van Suetendael's injuries were very substantial, and, therefore, that any verdict for the plaintiff would be far in excess of

6. For example, Mr. Denniston, the Travelers' attorney, testified as to a conversation he had with Standard's attorney. He testified:
that Standard's counsel told him that he had information that Travelers in fact had a $10,000 limitation on its policy; and that Standard's attorney offered to contribute the full amount of its policy— $10,000—if Travelers would also contribute $10,000.
Mr. Denniston testified further that he advised Standard's attorney that the attorney's information was incorrect and that he had never misled or lied to anyone, particularly to a Supreme Court Judge.

(Record, pp. 99–100).

7. The Company argues that there was substantial probability of avoiding liability if the jury believed that the panel truck driven by William Massello had been

standing still at the time of the accident. But William Massello admitted at all times that he had moved out into the intersection after first making a stop at a stop sign. The controversy was in connection with whether he had made a second stop, and was standing still when the vehicles collided. In this regard, the discrepancies in Massello's testimony which were pointed out in the settlement conference cast strong doubt on his contentions. In any event, as Justice Fanelli indicated at the first settlement conference before him, if the defendant was even one percent negligent, as he well might be in merely proceeding into the intersection after first stopping at the stop sign, he would be liable for the full amount of plaintiff's damages. In addition, the so-called disinterested eyewitness testified that the truck had been moving forward at the time of the collision, and that it struck the taxicab.

the combined policy coverage.[8] (See Record, pp. 247–48). In this situation, it is difficult to attribute the refusal to consider a settlement within the policy limits to anything other than bad faith.[9] See Bell v. Commercial Insurance Co., 3 Cir., 1960, 280 F.2d 514.

■ Defendant's attitude, as manifested throughout by its counsel, was that it had nothing whatsoever to gain from a settlement approximating the policy limits and nothing to lose by going to trial for it would under no circumstances be compelled to pay more than $10,000. Thus, it determined to proceed to trial, exposing the insured to a financial risk completely disproportionate to the possibility of success. Highly significant, in this respect, is the fact that neither the attorney nor any other representative of the defendant ever informed the Massellos that a settlement within the policy limits, thus avoiding any risk of personal liability, was possible. (See Record, pp. 162, 277, 283, 328–29, 336–37).[10] See also Jarrett, Lawsuits for Wrongful Refusal to Defend or to Settle, 1961 Ins. Counsel J. 58, 64. This is scarcely consistent with a diligent effort to protect the insured's interests.

■■ Neither am I persuaded by the defendant's argument that, since it knew

---

8. The bill of particulars, which was never disputed by any party in the personal-injury action, indicates the severity of Mrs. Van Suetendael's injuries. The bill details her injuries as follows:

crushing compound comminuted fracture of the right tibia with overriding of fragments; complete internal rotation of distal leg on proximal leg; fracture of large segment of fibula with angulation, separation and non-union of fragments; avulsion of skin from right foot to knee; multiple fine stones and cinders ground into right leg; shortening of the right leg; deformity of the right leg; loss of muscle and soft tissue of the right leg; loss of circulation of right leg; results of loss of circulation; hyperkeratosis; pigmentation; tautness; scaliness and cracking of skin right leg; scars of right leg; limitation of motion of right leg; limitation of motion of right foot and ankle; deformity of right foot; limp; scar of left ankle; curvature of the spine; deformity of back; shock; pain, injury to nerves and nervous system.

In addition, many of these injuries were alleged to be permanent. The bill of particulars indicated special damages in the sum of approximately $8,500. In the settlement conference, Justice Fanelli fixed the special damages between $9,000 and $10,000. (Record, p. 11). Standard's attorney testified at this trial that he realized at all times that the injuries were very substantial, and, in fact, that when he saw Mrs. Van Suetendael in court, his estimate as to the severity of her injuries increased. (Record, pp. 247–48).

9. The defendant argues, in connection with the statements of its counsel, that he had no authority to settle the case, and thus that the statements cannot be attributed to the company. But, as attorney for the company, he certainly had authority, be it termed apparent or implied, to appraise and discuss the case during the course of settlement negotiations, an ordinary and usual occurrence in virtually every case of this nature.

10. The defendant urges that the Massellos insisted to its attorney, throughout the trial, that they were not liable for the accident. (See Record, pp. 281–82, 334–35). But the Massellos testified, not only that they were never informed of the settlement possibilities, but also that they never told Standard's attorney not to settle the case. (Record, pp. 330, 337). In any event, the attorney, in determining whether to proceed to trial, must make an objective appraisal of the facts and the relevant law. The attorney's judgment must be that of an informed expert, acting in good faith and not that of interested laymen, such as the Massellos were. Parties to a suit can hardly be expected to make an objective appraisal of the facts and law in their own case. They are acting without expertise and usually view their position from a partisan and emotional point of view. The attorney, therefore, is expected to bring to the case the objectivity and expertise which the parties lack. This is especially important in the instant case, since Standard's attorney has considerable experience, and has been engaged almost exclusively in negligence and casualty litigation for 25 years. (Record, p. 179). In this situation, the failure to settle certainly cannot be excused on the ground that the Massellos maintained they were not liable.

that the Massellos were insolvent, and thus that the recovery of a substantial amount from them was unlikely, its decision to proceed to trial was reasonable. I do not believe that the financial condition of the insured is a relevant consideration when the company is making a good-faith determination as to whether to settle. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1146 n. 24 (1954). Certainly, the risk of bankruptcy is not an insubstantial one; if a person is caused, by a substantial judgment entered against him, to file a petition in bankruptcy, this is likely to eventuate in considerable future embarrassment and impairment of credit. This is certainly not an element which the company can be permitted to consider lightly. Further, it is not the function of the insurer, when undertaking the defense of an action, to ascertain the financial condition of its insured and to consider that factor in making a determination to defend. The decision as to whether to settle or proceed to trial should be made on the basis of an objective appraisal of the possibility of success; other extraneous considerations should be disregarded. Thus, a determination not to settle should be made only upon a bona-fide belief that there is a real likelihood of prevailing in the action. See Bell v. Commercial Insurance Co., 3 Cir., 1960, 280 F.2d 514.

It is clear that all of the criteria for a finding of bad faith are present in this case. I hold, therefore, that the defendant acted in bad faith in refusing to settle the personal injury action within the policy limits.

## V.

I next come to the question of damages. There appears to be a split among the jurisdictions as to whether payment of the excess judgment by the insured is a prerequisite to recovery of damages. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L. Rev. 1136, 1173–75 (1954), although the more recent cases seem to adopt the view that the entry of the judgment against the insured is sufficient in itself to warrant recovery of the amount of the excess from the insurer. See, e. g. Henke v. Iowa Home Mutual Casualty Co., 1959, 250 Iowa 1123, 97 N.W.2d 168; Comunale v. Traders & General Insurance Co., 1958, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883; Southern Fire & Casualty Co. v. Norris, 1952, 35 Tenn. App. 657, 250 S.W.2d 785. New York State has, apparently, not yet adopted any rule on the question of damages.

I do not, at this time, express any preference for either of these two rules. But I do not think it desirable to impose a requirement of payment as a prerequisite to recovery in a case such as this, when the insured is insolvent at the time of trial and is eventually forced into bankruptcy. If payment were a prerequisite in such a situation, the company could easily avoid the duty of good faith owed to the insured. For example, if the company knew, as it presumably would, of the insured's poor financial condition, it would then risk little by proceeding to trial regardless of the chances of success. Since the likelihood of payment of the excess by the insured would be slight, the chance of an ultimate recovery over of the excess against the insurer would be minimal. Thus, to require payment as a prerequisite would be to emasculate the important substantive policies underlying the obligation of good faith, at least in a case in which the insured's financial status renders payment impossible or unlikely. As the court stated in Southern Fire & Casualty Co. v. Norris, supra,

"The contrary view, while logical in the abstract, only serves as a windfall to an insurer fortunate enough to have insured an insolvent. The insurer in such a case stands in the position of having been derelict in the performance of its duty under a policy for which it accepted

a premium paid by the insured in good faith \* \* \* If the insured had not felt the need of the protection offered by the policy and the services of the Company in handling claims against him it is to be assumed he would not have taken the policy. The claim is now an adjudged liability which he can escape only by a discharge in bankruptcy or by payment. If he chooses the former course his credit is impaired. If he does not the outstanding judgment against him is likely to prove an insurmountable barrier to payment. If prepayment is required in cases of this kind the insurer is likely to be less responsive to its trust duties in cases where the insured is insolvent than in cases where the insured is able to discharge any judgment in excess of the policy limit which may be rendered against him." 250 S.W.2d at page 791.

█ Moreover, allowing recovery from the insurer in this case would not result in an unwarranted windfall to the Massellos. The bankruptcy proceedings have been left open pending the outcome of the litigation. The cause of action properly passed to the trustee, and is thus being maintained for the benefit of the bankrupt's estate. See 4 Collier on Bankruptcy, 1256–57 (14th ed.); Brown v. Guarantee Insurance Co., 1957, 155 Cal.App.2d 679, 319 P.2d 69, 66 A.L.R. 2d 1202. Cf. Comunale v. Traders & General Ins. Co., supra. Thus, the recovery will inure to the benefit of the trustee, rather than the Massellos, and will be available for the payment of claims of creditors, including, presumably, that of Mrs. Van Suetendael.

Thus the plaintiff is entitled to recovery of the full amount of the unpaid judgment, $89,000, and judgment will enter accordingly. The foregoing opinion will constitute the court's findings of fact and conclusions of law.