**Nathan and Manuel BROCHSTEIN, d/b/a Church Avenue Poultry, Plaintiffs,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**No. 63 C 865.**

United States District Court
E. D. New York.
March 22, 1967.

Howard Sheldon, New York City (Sheldon & Tarnoff, New York City, of counsel) for plaintiffs.

James T. Whalen, New York City (Whalen and O'Neill, New York City, of counsel), for defendant.

## MEMORANDUM

DOOLING, District Judge.

Plaintiff assureds seek to recover from their casualty insurer the amount in excess of the insurance policy limits that they paid to settle an adverse judgment in a personal injury case. The claim is based on the insurer's failure to accept an offer to settle the case before verdict at 80% of the policy limits. The verdict, full but not legally excessive, was for 190% of the policy limits and, with interest and costs (for the case was a death case), came to over 212% of the policy. The facts, separately found, disclose no mismanagement of the investigation of the case, or in the conduct of the court proceedings, or in the pursuit of negotiation to the point at which the defendant insurer was offering 65% to 70% of the policy limits to the personal-injury plaintiff against a demand for 80% to 90% of the policy limits. At that point plaintiffs, early notified that the case involved a claim in excess of coverage, and advised during trial of the stages of negotiation and that an adverse verdict was possible and could go into excess, took no action, tacitly looking to defendant to handle the matter. The defendant insurer elected to go to verdict, and the result was disastrous.

Since there was neither a breach of contract nor other wrong on the defendant insurer's part, it is concluded that the action must be dismissed on the merits.

Defendant's indemnity contract, evidently in the standard form, obligated it (i) to pay all sums (up to the policy limit) which plaintiff assureds were legally obligated to pay as damages for bodily injury and death, and (ii) to defend any suit for such damages "even if the suit is groundless * * * but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." The contract required that the insured shall cooperate with the Company "and shall assist in effecting settlements * * * and in

the conduct of suits." The contract continues: "The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense" except for emergency medical aid.

The New York cases in which liability has been imposed on an insurer for amounts in excess of coverage, or for other amounts, have been fairly plain cases. In Brassil v. Maryland Casualty Co., 1914, 210 N.Y. 235, 104 N.E. 622, L.R.A. 1915A, 629, the insurer, itself unwilling to appeal from a judgment in excess of the coverage, refused to pay its liability unless the insured too waived the appeal and paid the excess part of the judgment. The insurer was required to pay the cost of the assured's successful appeal, because the insurer could not require the assured to forego an appeal necessitated by the insurer's election to defend. So much, the Court thought (210 N.Y. at 241, 104 N.E. at 624), was part of that "contractual obligation of universal force which underlies all written agreements. It is the obligation of good faith in carrying out what is written." It was held that there was a duty to pay the expense of defense and also the cost of settlement, provided that the assured could show that it was liable, where the insurer wrongly disclaimed coverage. Mayor, Lane & Co. v. Commercial Casualty Insurance Co., 1st Dept. 1915, 169 App.Div. 772, 155 N.Y.S. 75. McAleenan v. Massachusetts Bonding & Ins. Co., 1st Dept. 1916, 173 App.Div. 100, 159 N.Y.S. 401, aff'd, 1916, 219 N.Y. 563, 114 N.E. 114, held that the insurer would be liable where it stated that it would appeal a judgment that went into excess and then failed to do so. An insurer was held liable where it so conducted a trial in which it had two assureds that one was cast in judgment, the other escaped liability, and enforcement of the first insured's right of indemnity against the second was embarrassed although not lost. The Court considered the conduct a breach of the duty to conduct the defense in good faith. New York Consolidated R. R. v. Massa-

chusetts Bonding & Ins. Co., 2d Dept. 1920, 193 App.Div. 438, 184 N.Y.S. 243, aff'd 1922, 233 N.Y. 547, 135 N.E. 912. The case of Brunswick Realty Co. v. Frankfort Ins. Co., N.Y.Co.1917, 99 Misc. 639, 166 N.Y.S. 36, came up on motion, and held that bad faith sufficiently appeared from a complaint that alleged the insurer's refusal to settle just within the policy limit unless the insured paid half the settlement.

But the cases are unyielding in declining to recognize any duty to settle, or to see "bad faith" in refusals to settle, or other acts, that, circumstantially, suggest that the insurer pursued its own interest and left the insured to take care of his own exposure to uninsured liability. Schencke Piano Co. v. Philadelphia Casualty Co., 1915, 216 N.Y. 662, 110 N.E. 1049 is taken to hold that where an insurer declines to settle within the policy limits and the judgment goes into excess, it is not liable for any implicit negligence or lack of due diligence if there is neither fraud nor bad faith. A refusal to settle until the insured contributes where the total settlement is within the policy limits does not make the insurer liable to the insured for his contribution to the settlement. Levin v. New England Casualty Co., App. Term, 1st Dept. 1917, 101 Misc. 402, 166 N.Y.S. 1055, aff'd, 1st Dept. 1919, 187 App.Div. 935, 174 N.Y.S. 910 aff'd, 1922, 233 N.Y. 631, 135 N.E. 948. In the Mc-Aleenan case, supra, the defendant was held not liable for the excess judgment where the insurer refused to join the assured in making a settlement in which each would pay one-half the settlement amount, even though the insurer's share of the settlement would have been only 75% of the policy limit. (It was suggested that the assured had the right *at its own cost* to settle the assured's uninsured or excess liability without the company's consent.)

The three most recent decisions of the Court of Appeals, although decided in the 'twenties, appear to have crystallized the rule in terms that leave little scope for spelling "bad faith" out of an in-

surer's self-interested action. Auerbach v. Maryland Casualty Co., 1923, 236 N.Y. 247, 140 N.E. 577, 28 A.L.R. 1294, was a case in which insurer and assured agreed that the case should be settled and disagreed on their respective contributions, the assured insisting that the insurer pay the face amount of the policy, the insurer insisting that the assured pay nearly half the settlement while the insurer contributed 70% of its policy amount. There was no settlement and the recovery was for four times the policy amount. The Court was explicit that there was no duty to settle even though the insurer had advised the assured in writing that the available settlement terms ought to be accepted. The Court said (236 N.Y. at 253, 140 N.E. at 579), "The advice thus given imposed upon it no legal obligation to make the settlement. It knew that its liability was limited to $5,000, and while it offered to pay $3,500 towards a settlement [of $6,500], that did not impose upon it the obligation to pay the full amount of the policy prior to the trial."

A little later, in Streat Coal Co. v. Frankfort General Ins. Co., 1923, 237 N.Y. 60, 142 N.E. 352, the Court decided that the insurer was not liable for an excess recovery where it declined to settle at the policy limit and failed even to advise the assured that the settlement offer had been received and rejected. The assured went to trial against the insurer on the theory that proof that the assured had been deprived of the opportunity to make a settlement that it would have been willing to make would establish the insurer's liability without proof of "bad faith," which was disclaimed. No doubt the case may be read to imply that the assured's assumed willingness to settle meant willingness to settle with the insurer's policy funds; but the Court's emphatic point, expressed in a variety of ways, is that no undertakings not in the contract are to be read into it by implication. The Court stated that either assured or insurer could settle the claim at its own cost without notice to or consultation with the other,

and that the insurer had the right and duty to defend and the right to control the suit. It is evident that the Court considered that to require the insurer to report proposals of settlement and to consult with the assured would improperly dilute the insurer's express right to defend and to settle.

Best Bldg. Co., Inc. v. Employers' Liability Assur. Corp., 1928, 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464, presented a case in which a personal-injury plaintiff offered to settle for 85% of the policy, the insurer, without notifying its insured, offered 65%, and the offer was rejected. The recovery was for 160% of the policy. The assured alleged that, had it been advised of the proposal of settlement, it would have contributed the amount needed to bridge the gap, and it sued to impose the excess liability on the insurer. The Court took it as conceded that the insurer "would be liable for its fraud or bad faith," and that the insurer had no duty to settle. The Court then considered whether "negligence" in the context of the handling of settlements could be a basis of liability, and it concluded that such a theory would be treacherously difficult to manage and that the *Schencke Piano* case, supra, had already rejected it.

It is not possible in the light of the cases to accept that New York law conforms to Professor Keeton's touchstone, that "the insurance company must in good faith view the situation as it would if there were no policy limit applicable to the claim" (Keeton, Ancillary Rights of the Insured against his Liability Insurer, 1961, 28 Ins. Counsel Jl. 395, 397). The later New York cases do not suggest any approach to that test, nor any retreat from the principles enunciated in the Court of Appeals cases, and neither Brown v. United States Fidility & Guaranty Co., 2d Cir. 1963, 314 F.2d 675, nor Harris v. Standard Accident & Ins. Co., S.D.N.Y.1961, 191 F.Supp. 538, rev'd, on another point, 2d Cir. 1961, 297 F.2d 627 (see, in the latter opinion, p. 630 and fn. 5) goes beyond the New York cases. The facts in the *Brown* case were

extreme, and the Court's conclusion was simply that the evidence "on the issue of bad faith" sufficed "to take the case to the jury" (314 F.2d at 682). In the *Harris* case the insurer's trial counsel had stated during the personal injury trial that he knew the insured would be held liable, but that he would finish the trial since the insurer had nothing to lose. (On these facts the Court of Appeals indicated doubt that New York would hold the insurer liable). The later New York cases contain nothing of moment. See Garcia & Diaz, Inc. v. Liberty Mutual Ins. Co., N.Y.Co.1955, 147 N.Y.S. 2d 306; Abramson v. Kenwood Laboratories, Inc., Kings Co. 1961, 223 N.Y.S.2d 1005, 1007, rev'd, other grounds, 2d Dept. 1962, 17 App.Div.2d 626, 230 N.Y.S.2d 247; cf. Duprey v. Security Mutual Casualty Co., 3rd Dept.1965, 22 App.Div.2d 544, 256 N.Y.S.2d 987. The "discovery" cases assume that "bad faith" must be proved, and that requirement appears to condition the allowable scope of disclosure. See Colbert v. Home Indemnity Co., Monroe Co. 1965, 45 Misc.2d 1093, 259 N.Y.S.2d 36, aff'd, 4th Dept.1965, 24 App.Div.2d 1080, 265 N.Y.S.2d 893; Groben v. Travelers Indemnity Co., Oneida Co. 1965, 49 Misc.2d 14, 266 N.Y.S.2d 616.

It is strange, if inevitable, that the covenant to defend, which includes in practice nominating and paying counsel who appear for the assured as defendant, is not thought of as involving the furnishing of counsel, in the case in which coverage may be inadequate in amount, who will be free to represent the assured effectively in the statistically most important aspect of defense, the negotiation of settlement. Cf. Keeton, Liability Insurance and Responsibility for Settlement, 1954, 67 Harv.L.Rev. 1136, 1169–1172. At that critical point, although if there is no settlement, the appointed lawyer goes on to defend against the whole claim, not just the insured part of it (cf. American Employers Ins. Co. v. Goble Artcraft Specialties, Inc., N.Y.Co.1954, 205 Misc. 1066, 131 N.Y.S.2d 393, 401–402) he deals with the personal-injury plaintiff not as representing the assured but as representing the insurer to the extent of its interest, and without, apparently a duty even to report the settlement discussion to his nominal client, the assured. See the *Best Building* and *Streat Coal* cases, supra. At that point the insured, in the case that is in the gray zone near the policy limit, needs one lawyer single-mindedly devoted to dealing both with the plaintiff to reduce his demand and with the insurer to raise its contribution, a situation that would wrest control of the negotiation from the insurer, who often has the larger interest in the outcome. But except in extreme situations (see e. g. Trieber v. Hopson, 3rd Dept.1967, Law Report News, March 7, 1967, p. 5), the New York law does not extend legal protection to the assured's individual interest in that kind of distinctive representation in dealing with the insurer. It might seem that at this stage it is the assured and not the insurer who should be entitled to complete advice and undivided loyalty from the lawyer who is defending him, but that may be wholly impractical, and the law is plainly otherwise, except, perhaps, in atypical situations such as that indicated in Prashker v. United States Guarantee Co., 1956, 1 N.Y.2d 584, 593, 154 N.Y.S. 2d 910, 136 N.E.2d 871. The insurer, on the other hand, menaced by the vague threat of a "bad faith" charge, may often hesitate to negotiate with the assured for a contribution to the settlement, although in many cases that could be the perfectly fair (and easily abused) solution and not a retreat from responsibility. The result is that, as perhaps in this case, settlements are not made simply because there is no open, safe and familiar mode of dealing with the reality of the need for a controlled arms-length discussion between the assured and the insurer about their respective interests in the settlement, conducted in the perspective of the insurer's institutional responsibilities as an insurer.

Whatever the shortcomings of the present set of practices, it is evident in this case that plaintiffs are not entitled

to relief. No bad faith is shown. Cf. *Younger v. Lumberman's Mutual Casualty Co.*, La.App.1965, 174 So.2d 672, 679, aff'd, 1965, 247 La. 1086, 176 So.2d 145.