Berg-ax, J.
Recovery in this action on behalf of the insured Louis Porter by his receiver against the insurer Nationwide Mutual Insurance Company rests on a breach of good faith in the performance of its liability insurance contract by the company in managing the defense of liability claims against Porter.
The claimed breach of the implied obligation of the insurer to perform its contract of insurance in good faith rests on its refusal to settle negligence claims against Porter within the policy limits of $20,000.
The refusal, in turn, was based on the insurance company’s assertion the policy had been canceled. Following on this asser *431 tion, the company withdrew from the defense of the negligence actions and refused to settle the claims within the policy limits. Porter ignored a notice of application by the plaintiffs in those actions to take inquests, served personally on him, and defaulted. The inquests, in turn, became the basis of Porter’s receiver’s present judgment against Nationwide. That judgment is for $259,058.87, over twelve-and-a-half times the policy limit.
Porter himself breached his contract to pay installments to Premier Credit Corporation which had financed on his behalf the premium for Nationwide’s coverage, and it was this conceded breach of his premium financing contract, and the notice of nonpayment received by Nationwide from Premier as Porter’s agent, which led Nationwide to assert that the policy had been canceled and coverage terminated.
A “ Notice of Cancellation ”, following Porter’s failure to comply with his contract with Premier to pay for Nationwide’s coverage, was sent by mail by Premier both to Nationwide and Porter. On locating this notice in its files Nationwide, which had undertaken the defense of the negligence actions, told attorneys for claimants against Porter that it regarded the policy as canceled and would not defend Porter or be responsible for resulting judgments.
It may be assumed for the purpose of this appeal that Nationwide was wrong as a matter of law in its assertion that Porter’s uncontroverted default on his premium contract had effectively canceled the policy. But this does not make Nationwide liable for acting in bad faith.
More than an “ arguable case ” of coverage responsibility must be shown before liability may be imposed for breach of an implied covenant to act in good faith in denying coverage (Sukup v. State of New York, 19 N Y 2d 519). The holding in that case embraced a determination that the carrier was wrong as a matter of law in denying coverage, i.e., that there was coverage.
It was observed (p. 522): ‘1 The record in this case shows that the carrier was wrong and the insured right as to coverage, as the Workmen’s Compensation Board found. The record does not show any gross disregard for its policy obligation by the insurer in asserting noncoverage. The record shows merely an arguable case in which the carrier was held wrong. That is not enough to impose a liability beyond the terms of the contract.”
*432 The notice of cancellation was mailed by the finance company to Porter November 10, 1961 with an effective date of cancellation stated to be November 23. This was not the 10 days’ notice with 3 days added for mailing required by section 576 (subd. 1, par. [b]) of the Banking Law, governing cancellation by a “ premium finance agency”. Although.it gave 13 days’ notice, the day of mailing should have been excluded. The accident in which Porter was involved occurred November 28, 1961, well beyond 14 days after the mailing of the notice of cancellation to him on November 10.
The accuracy of the computation of days was debated between counsel at the trial of this present action, although appellant carrier does not argue on the merits in this court that the notice given to it and the insured by the finance agency technically met the time requirements of the Banking Law.
There is a large and very fundamental difference, however, on the effect of this one-day technicality in notice of cancellation flowing from Porter’s breach of contract, between the legal effect of this purported cancellation of insurance and the asserted failure of Nationwide to act in good faith toward Porter when it refused to settle the case within the policy limits of $20,000.
If, as it now appears, Porter’s finance company was a day short in the notice of cancellation it sent for Porter’s breach of contract, the normal consequence would be that the policy remained in effect, uncanceled, and Nationwide continued liable for $20,000.
Indeed, Nationwide has been required in an earlier phase of this present action on behalf of judgment creditors in the negligence actions who were original coplaintiffs to pay its policy limits (58 Misc 2d 667, affd. 31 A D 2d 722) and that Is not open in this appeal.
This was the holding in Cannon v. Merchants Mut. Ins. Co. (35 Misc 2d 625), the effect of which was debated between counsel for Nationwide and counsel for the plaintiffs in the actions against Porter. But á good faith belief in the cancellation of the policy would not only depend on the view the insurer took of the legal question, but also itsjdew of the facts of Porter’s default in payment. In Johnson v. General Mut. Ins. Co. (24 N Y 2d 42) not only was the notice of cancellation not sufficient in time, but in fact the insured had not defaulted in payment (p. 47).
*433 Therefore, the question of breach by Nationwide of its good-faith obligation to perform its contract of coverage cannot be walled off from the actualities in the chain of events which Porter set in motion by failure to perform his contract with his finance company to pay the premium.
And Nationwide’s bad faith must be shown to be so great as to require it, not only to pay the policy limits, but to pay the essentially punitive sum of $250,000.
No such remarkable showing of bad faith is made in this record to warrant submission of the case to a jury fpr imposition of liability vastly beyond the policy limits on any theory—either breach of contract or negligence.
Nationwide’s counsel advised it that the policy had properly been canceled for Porter’s breach. Counsel testified on the trial, not only that this had been his professional opinion when advising the company, but that it continued to be his opinion at the trial of the present action.
Counsel for the plaintiffs in the negligence actions against Porter argued with the insurer’s counsel that the law was the other way—i.e., the notice of default given by the finance company was a day short and cited Cannon v. Merchants Mut. Ins. Co. (35 Misc 2d 625, supra). The insurer’s counsel replied he believed that case wrongly decided, and that the policy had properly been canceled well before the accident had occurred.
It would be an extraordinary result to hold a client guilty of breach of good faith, with large punitive damages, because it acts on advice of counsel—even mistaken advice — about the precedential stature of a single case in the Miscellaneous Reports. It would be even more extraordinary if liability could be imposed on a client for breach of good faith in following counsel’s advice because an adversary lawyer disagrees with the legal merits of the advice given. And the acerbity of the argument has itself no legal consequence.
When the actual documents governing the relations between Porter, his finance company Premier, and Nationwide, are examined, it is to be observed that Premier was vested by Porter with a very large measure of control over the continuance of Nationwide’s policy. Porter assigned to Premier “all rights” that he had under the policy, and in case of default in installment payments, Premier was appointed Porter’s agent to “ request *434 cancellation This was a normal and reasonable consequence since Premier was assuming financial arrangements for the premium.
The indorsement in the policy, binding on Porter, “ specifically directs ” Nationwide to honor any request for cancellation made by Premier ‘ ‘ just as though such requests were in fact made ’ ’ by Porter. The indorsement also provided that ‘ ‘ if the Company [Nationwide] cancels the policy it will be with advance notice to the Policyholder and the Lender ”.
It seems obvious this kind of direct cancellation by the insurer itself requiring notice to both Porter and Premier is not the kind of cancellation requested by the finance company on Porter’s behalf as Porter’s agent for a failure to pay finance installments. This distinction is to be seen in the statute governing the right of a “ premium finance agency ” to cancel an insurance contract by giving notice (Banking Law, § 576, subd. 1, pars, [a] & [b]).
The “ Notice of Cancellation ” sent by Premier on November 10,1961 was mailed both to Porter and Nationwide and, reciting that Porter was in default, it could scarcely be treated by the insurer as other than election by Porter’s agent to request cancellation. All this has a bearing on the good faith of the carrier in accepting its counsel’s view it was not on the risk when the accident of November 28,1961 occurred.
Furthermore, and significant on the issue of good faith of Nationwide, it was Premier’s error of one day in computing the time of the notice of cancellation for Porter’s conceded default, and not Nationwide’s, that fell short of the statutory requirement— a requirement which the statute placed directly on Premier. Nationwide failed to take note of the shortage of time in Premier’s notice to it and of the fact that Premier had mailed the notice to Porter rather than served it personally. If served personally it would have been timely (Banking Law, § 576, subd. 1, par. [a]).
This was the error of Premier in following the statute and not of Nationwide which, like Porter, was on the receiving end of Premier’s notice. It would be a harsh result indeed to impose the punitive consequence of a $250,000 judgment on Nationwide for this.
Certainly no harm was done to anyone—Porter or the claimants against him — by Nationwide’s initial undertaking of the *435 defense of the negligence actions before it discovered the notice of cancellation in its files. Nationwide had during this period received an offer of settlement of the actions within the policy limits which it did not accept, but it had Porter’s report of the accident disclaiming responsibility and bad faith may not possibly be inferred from its failure to settle for the extent of its coverage at that early and indecisive stage of the litigation.
Nor had Porter made a request at any time to Nationwide that the claims against him be settled within the policy limits. Such a request, or an expressed desire by an insured that the insurer exhaust the limits of coverage, is a significant factor in some of the cases where the insurer’s liability has been permitted to exceed the amount of coverage.
Its decision to withdraw from the defense of the negligence actions and its refusal to settle within the policy limits after that decision are both dependent on the assertion the policy had been canceled and both decisions are interrelated. It was on the basis of these decisions, charged by Porter’s receiver to have been made in bad faith, that the judgment of $250,000 has been entered against Nationwide. No bad faith in justification of that judgment is established under this record.
The theory of Porter’s receiver’s claim of damage is that the large judgments resulting from the inquests have had some actual adverse economic or personal effect on Porter. It is alleged in the complaint that Porter was “ damaged” by the judgments to the extent that the receiver of his “ rights and assets ” may recover the inquest-determined amounts on his behalf; that Porter “ became indebted ” to the negligence claimants and that the receiver is entitled to recover “ on behalf of Louis Porter ”, and in this court the receiver’s brief describes the receiver’s action as “ Porter’s claim asserted for Porter ”.
It would not be easy to demonstrate greater indifference to the judgments or other consequences of his negligent driving than that displayed by Porter in this case. From the moment Nationwide advised him that because of his conceded breach of his finance contract for the premium, it would withdraw from the defense of the case, Porter showed no interest whatever in the consequences to him or to anyone else.
This complete indifference to the obligations under his contract, or to the claims based on his negligence, distinguished the *436 case sharply from those decisions in which policy limits have been exceeded because of the bad faith of an insurer in managing the defense of claims. Porter’s situation is thus similar to that considered in Fidelity & Cas. Co. v. Gault (196 F. 2d 329 [5th Cir.]).
Both Nationwide and the attorneys who had been retained by it to appear for Porter advised him by letters, November 19, 1963, that since his policy had been canceled November 23, 1961, before the accident, they would withdraw from the defense of his action and that he should retain other lawyers, a procedure which the lawyers retained by Nationwide told him they would facilitate. Porter ignored this notice.
He defaulted, both on an application to the court by his attorneys to withdraw from the case, and on an application by the attorneys for the plaintiffs in the negligence cases against him to take inquests. Service of both of these notices was made personally on Porter by direction of the court. He showed no concern about either motion.
It is against this background of utter indifference to his contractual obligations under the insurance contract that the “ bad faith ” of Nationwide in performance of its part of the contract with Porter must be measured.
A party indifferent to his contractual obligations arising from a liability insurance policy—in “Porter’s claim asserted for Porter ” — has succeeded in imposing a heavy punitive judgment on the other party to the contract for not performing it in good faith.
The rules governing the measure of damage chargeable to a liability insurer on failure, in violation of its contract, to defend the insured or to settle a claim within policy limits, are rather well established and understood in the profession. There is essentially no difference of view within the court as to what the rules are.
For a breach of the obligation to defend, the measure of damage is the cost of defense to the insured and the amount of recovery, if any, against the insured within the policy limits.
For a breach of contract based only on a failure to make reasonable settlement of a claim within the policy limits, damages are measured by the policy limits. For a breach of implied conditions of the contract to act in its performance in good faith in *437 refusing to settle within the policy limits, the damages may exceed the policy limits.
The punitive nature of damage for the bad faith breach of contract is a characteristic of the law of contracts generally, and is not a peculiarity alone of the contract of liability insurance. In every contract ‘ ‘ there exists an implied covenant of good faith and fair dealing ” (Kirke La Shelle Co. v. Armstrong Co. (263 N. Y. 79, 87).
The general application of the rule in New York is illustrated in Van Valkenburgh, Nooger & Neville v. Hayden Pub. Co. (30 NY 2d 34); Underhill v. Schenck (238 N. Y. 7), and Wilson v. Mechanical Orguinette Co. (170 N. Y. 542).
But a punitive measure of damages is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract.
An illustration of a refusal of the court to accept bad faith as a ground to disregard the usual rule of damage flowing from a breach is Van Valkenburgh (30 N Y 2d 34, supra) where, in an arguable case of defendant’s acting in self-interest, the damages were limited to those flowing directly from a breach of a condition of the agreement and not allowed to exceed that measure.
No authoritative case in New York has ever allowed recovery against an insurer beyond the policy limits where the insured had in fact failed to make payment under a premium financing contract and the insurer’s bad faith was a mistaken belief the policy had lawfully been canceled for this reason. The decision in Johnson v. General Mut. Ins. Co. (24 N Y 2d 42, supra), where the insured was actually not in default in premium payment and the policy had been wrongfully canceled, is a good illustration of the rule.
In Brassil v. Maryland Cas. Co. (210 N. Y. 235) there was an undisputed policy of coverage, a refusal to settle within its limits, a judgment in the negligence claim which exceeded the policy, a refusal by the insurer to appeal and a successful appeal prosecuted by the insured. The issue before the court was the insurer’s obligation to pay the reasonable expenses of appeal, an obligation which was found in the absence of good faith of the *438 insurer (p. 242). The absence of good faith there bears no relevancy to the present case.
In New York Cons. R. R. Co. v. Massachusetts Bonding & Ins. Co. (193 App. Div. 438, affd. 233 N. Y. 547) coverage was not in dispute. The insurer concededly managed the trial of the insured’s case in its own interest in such a manner as, in bad faith, to deprive the assured of a right of subrogation (193 App. Div., p. 444). This case also has no relevancy to the present case.
And in McAleenan v. Massachusetts Bonding & Ins. Co. (232 N. Y. 199) the failure of defendant to move for nonsuit and the unanimous affirmance by the Appellate Division were held to preclude this court from examining the issue of damage.
Nor do the cases in other jurisdictions based on bad faith refusal to settle and permitting policy limits to be exceeded give greater support to plaintiff’s claim here than the New York decisions. It is fair to say as to those cases, too, none has gone as far as the present case in allowing damage to an insured whose act of default became the basis of the insurer’s assertion of noncoverage.
A good illustration of this distinction is in American Fid. Fire Ins. Co. v. Johnson (177 So. 2d 679 [Fla.]) where, as in Johnson v. General Mut. Ins. Co. (24 N Y 2d 42, supra) in New York, the premium for renewal of policy had actually been paid but through mishandling by a broker under an arrangement made by the insurer’s agent, the insurer treated the policy as canceled. A refusal to settle was there treated as a breach of good faith and the policy limit was penetrated.
A similar problem was considered in Blakely v. American Employers’ Ins. Co. (424 F. 2d 728 [5th Cir.]). There, although the premium had actually been paid, an agent of the company received a notice that it was canceled for nonpayment: The
company’s denial of coverage was déemed wrongful and damage was permitted beyond the policy limits.
In Landie v. Century Ind. Co. (390 S. W. 2d 558 [Mo.]) the policy concededly covered plaintiffs who had not themselves contributed to the coverage problem and the issue of good faith on the refusal to settle was held to be an open fact question. In Bowers v. Camden Fire Ins. Assn. (51 N. J. 62) there was conceded coverage and a “ selfish” refusal by the insurer in its own interests to settle.
*439 In Western Cas. & Sur. Co. v. Herman (405 F. 2d 121 [8th Cir.]) the court treated the stipulation between the parties as having “conclusively established” the insurer’s lack of good faith (p. 123). And in Liberty Mut. Ins. Co. v. Davis (412 F. 2d 475 [5th Cir.]) the insurer’s refusal to settle in a case of conceded coverage was based on its own self-interest — a fear of a risk to itself of liability in other actions. This was regarded as a breach of good faith.
Finally, in Comunale v. Traders & Gen. Ins. Co. (50 Cal. 2d 654) the court accepted without differential analysis, as a predicate for its decision, the “ wrongful refusal ” of the insurer to settle a ólaim. ' These cases are all distinguishable from the present case.
Where there is a breach of the terms of a contract of insurance, not found to have been made in bad faith, the damage for refusal to settle is limited, both in New York and elsewhere, by the policy coverage or, additionally, to that and the cost of defense where there is also a refusal to defend (Grand Union Co. v. General Acc., Fire & Life Assur. Corp., 279 N. Y. 638; Best Bldg. Co. v. Employers’ Liab. Assur. Corp., 247 N. Y. 451; Seward v. State Farm Mut. Auto. Ins. Co., 392 F. 2d 723 [5th Cir.]; Hendry v. Grange Mut. Cas. Co., 372 F. 2d 222 [5th Cir.]; Myers v. Farm Bur. Mut. Ins. Co., 14 Mich. App. 277).
The order should be reversed and the complaint dismissed, with costs.