**Arthur D. LEIDESDORF, Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, North River Insurance Co., Royal Globe Insurance Co., and St. Paul Fire & Marine Insurance Co., Defendants.**

**No. 78 Civ. 4665.**

United States District Court, S. D. New York.

March 30, 1979.

---

Frank A. Weg, New York City, for plaintiff; Ira M. Myers, New York City, of counsel.

Bingham, Englar, Jones & Houston, New York City, for defendants; James M. Hughes, Stephen M. Marcusa, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Arthur Leidesdorf insured his art collection against risks of loss or damage through insurance contracts issued by the four defendant companies. In the early part of 1978 Leidesdorf sought payment from the insurance companies, based upon his allegation that a large part of his collection had been converted by Alan Baer, who had been employed by plaintiff to catalogue and photograph his collection and to advise plaintiff with respect to his collection. Nonetheless, based on an investigation by

an independent adjuster, the four companies deemed the circumstances surrounding the alleged conversion highly unusual and, indeed, suspicious. The only substantiation of the claim was a confession signed by Baer; yet plaintiff did not report the claimed "theft" to the New York City Police Department or any other law enforcement agency, and plaintiff took no legal steps to recover his property or the proceeds thereof from Baer.

The insurers, as was their right under the insurance agreements, notified plaintiff to appear at an examination under oath and to produce at that time all documents necessary to substantiate and verify the claim.[1] A review of Leidesdorf's testimony reveals that he gave vague answers, proffered lack of knowledge as to certain matters with which he said two employees, Eleanor Jones and Dorothy Davidson, were familiar, and failed to produce the documents requested. Subsequently, despite several requests by the attorney for the companies, plaintiff failed to indicate a time and date for the continuation of his examination, to produce the documents relevant to the investigation, and to cooperate in securing the presence of his employees Jones and Davidson for examination. Instead, Leidesdorf, through his attorney, demanded an advance partial payment of $500,000, pending defendants' final evaluation of the amount of his claim.

Plaintiff commenced the present action in October 1978, seeking payment of his claim, together with punitive damages against the four companies.[2] The punitive relief was sought in the second through seventh causes of action upon allegations of bad faith by reason of tortious conduct, fraud, breach of implied fiduciary duties, coercion and intimidation, and criminal indifference to their obligations, as well as an allegation of prima facie tort. Defendants move to strike these causes of action from the complaint on the ground that punitive damages are barred by New York law in actions to enforce the provisions of insurance policies. The parties having submitted affidavits and statements pursuant to Rule 9(g) of the General Rules of this Court, the motion will be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The Court finds that the plaintiff's claims for punitive damages are utterly without substance and that the second through seventh causes of action should be stricken from the complaint.

▪ "Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement . . . . The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another."[3] The Court in this case is bound by the law and policy of the State of New York that "a punitive measure of damages is not applied

1. At least two of the four contracts of insurance contained as conditions of payment the following clauses requiring the cooperation of the insured:

   1. Misrepresentation and Fraud. This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

   .    .    .    .    .

   3. Examination Under Oath. The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Company and subscribe the same; and, as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company . . . . .

2. Jurisdiction is grounded upon diversity of citizenship, 28 U.S.C. § 1332, and the parties agree that New York law governs the dispute, since the contracts of insurance were issued in this State.

3. *Reynolds v. Pegler*, 123 F.Supp. 36, 38 (S.D.N.Y.1954), *aff'd*, 223 F.2d 429 (2d Cir.), *cert. denied*, 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955) (quoted and followed in *Zarcone v. Perry*, 572 F.2d 52, 55 (2d Cir. 1978)).

routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract." [4] Thus New York courts have routinely dismissed claims for punitive damages against insurance carriers when there had been no showing that the carrier, "in its dealings with the general public, had engaged in a fraudulent scheme evincing such 'a high degree of moral turpitude and . . . such wanton dishonesty as to imply a criminal indifference to civil obligations.' " [5] Under the clear facts of this case, plaintiff has made no such showing.

■ To begin with, plaintiff's mere assertion of malice, bad faith and deceitful conduct will not survive a motion for summary judgment when the only fact in support thereof is that the insurer refused to pay a claim under the terms of a policy issued to the insured after due demand was made.[6] In the present case, moreover, the defendant companies, according to the affidavits and exhibits submitted to the Court, justified their good faith doubts as to the validity and nature of the Leidesdorf claim; and the fact that the companies relied on an independent adjuster, who raised these doubts, supports their contention that their failure to pay was not in bad faith but was, instead, sound insurance practice.[7] Despite the fact that plaintiff has known of the alleged conversion of the insured property and of the claimed confession by the culprit, he has made no adequate explanation of his failure promptly to notify investigative authorities or to take any action against the offender.

■ The conclusion that defendants' refusal to pay the claim forthwith was based upon substantial doubt as to its validity, and not malice or bad faith, is further supported by the grudging and oftentimes contentious lack of cooperation afforded to the investigation by Leidesdorf and his counsel. The contractual duty of the insured was to supply the companies with all documents relating to his claim, yet it is not clear that the documents have been turned over even now, despite several requests by defendants' counsel that the examination of Leidesdorf be resumed. Plaintiff's cooperation was a condition precedent of the insurance contracts, and his failure to be completely forthcoming must weigh against any finding of bad faith on the part of the companies. "To allow a recovery for wilful misconduct on an insurer's part when an insured itself has not shown compliance with all its obligations under the policy would work an unconscionable result." [8]

Under the facts of this case and the principles of New York law, plaintiff is not entitled to punitive damages against the

4. *Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 437, 334 N.Y.S.2d 601, 609, 285 N.E.2d 849, 854 (1972); *see Walker v. Sheldon*, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961) (punitive damages appropriate "where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted from indulging in similar conduct in the future").

5. *Buttignol Constr. Co. v. Allstate Ins. Co.*, 22 A.D.2d 689, 253 N.Y.S.2d 172, 173 (1964) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 499 (1961)); *accord, Kleiner v. Thomas Jefferson Life Ins. Co.*, 63 A.D.2d 636, 405 N.Y.S.2d 255 (1978) (mem.); *M.S.R. Assocs. Ltd. v. Consolidated Mut. Ins. Co.*, 58 A.D.2d 858, 396 N.Y.S.2d 684 (1977).

6. *See Cohen v. New York Property Ins. Underwriting Ass'n*, 65 A.D.2d 71, 410 N.Y.S.2d 597 (1978); *John C. Supermarket, Inc. v. New York Property Ins. Underwriting Ass'n*, 60 A.D.2d 807, 400 N.Y.S.2d 824 (1978) (prima facie tort); *Frizzy Hairstylists, Inc. v. Eagle Star Ins. Co.*, 93 Misc.2d 59, 403 N.Y.S.2d 389 (App. Term 1977) (per curiam), *rev'g* 89 Misc.2d 822, 392 N.Y.S.2d 554 (S. Ct.1977).

7. *Cohen v. New York Property Ins. Underwriting Ass'n*, 65 A.D.2d 71, 77–78, 410 N.Y.S.2d 597, 601 (1978).

8. *Id.* at 78, 410 N.Y.S.2d at 601–02. This finding distinguishes the instant case from the authority cited by plaintiff, *Hyland Hair Stylist, Inc. v. Travelers' Indem. Co.*, 71 Civ. 5530 (CHT) (S.D.N.Y. July 7, 1972), in which the Court on a motion to dismiss (which it granted with leave to file an amended complaint) was required to accept the allegations of the complaint.

insurance carriers.[9] Accordingly, the Court dismisses the second through seventh causes of action in the complaint.

9. The Court does not reach the issue of whether a suit for punitive damages is barred by the rule stated by some New York courts that there is no private right of action for unfair claims practices by insurers, since "punishment is more properly within the province and jurisdiction of the State Superintendent of Insurance (see Ins.Law §§ 5, 40–d, 274)." *Frizzy Hairstylists, Inc. v. Eagle Star Ins. Co.*, 93 Misc.2d 59, 403 N.Y.S.2d 389, 390 (App. Term 1977) (per curiam); *see Cohen v. New York Property Ins. Underwriting Ass'n*, 65 A.D.2d 71, 410 N.Y.S.2d 597 (1978).