ROYAL GLOBE INSURANCE COMPANY, Appellant-Respondent, v CHOCK FULL O'NUTS CORPORATION, Respondent-Appellant.

First Department, May 6, 1982

#### APPEARANCES OF COUNSEL

*Eugene Wollan* of counsel (*Lawrence S. Greengrass* with him on the brief; *Rein, Mound & Cotton,* attorneys), for appellant-respondent.

*Adam B. Gilbert* of counsel (*Martin I. Shelton* with him on the brief; *Shea & Gould,* attorneys), for respondent-appellant.

#### OPINION OF THE COURT

FEIN, J.

Plaintiff sued its insured for over $3.3 million in insurance premiums and service charges allegedly due. Defen-

dant counterclaimed for $5 million, asserting, *inter alia,* damage from unfair claim settlement practices under section 40-d of the Insurance Law. In addition, defendant sought attorneys' fees and $5 million in punitive damages.

■ Special Term was correct in dismissing the fourth counterclaim. We have held that section 40-d of the Insurance Law does not create a private right of action for an insured against its insurer, and have concluded that the statute was intended to afford only a public right of redress to a State agency respecting the elimination of unfair claims practices by insurers (*Cohen v New York Prop. Ins. Underwriting Assn.,* 65 AD2d 71, 78-79). As defendant submits, more recent opinions in the Court of Appeals (*Hubbell v Trans World Life Ins. Co. of N. Y.,* 50 NY2d 899; *Halpin v Prudential Ins. Co. of Amer.,* 48 NY2d 906, mot for rearg den 49 NY2d 801) have left the door open to the possibility of private damage actions under section 40-d. However, the circumstances of those cases were held not to warrant such remedy, even if otherwise available. We find nothing in the case now before us inviting a different response.

The policies of insurance issued by plaintiff to defendant include a workers' compensation and employer's liability policy and a service agreement. In part, at least, the insurer agreed to provide a claims service and attorney's services in defense of claims asserted against the plaintiff. The first three counterclaims allege that: (1) plaintiff (Royal) breached its contractual obligation under the service agreement resulting in gross overpayments to claimants and requiring excessive reserves for losses; (2) Royal breached its fiduciary duty to defendant Chock Full O'Nuts Corporation (Chock); and (3) Chock was induced to enter into the agreements based upon misrepresentations by Royal.

The fourth counterclaim, here in issue, realleges the allegations of the first three counterclaims, and then in substance paraphrases portions of subdivision 1 of section 40-d of the Insurance Law alleging that plaintiff (1) failed to respond to defendant's communications concerning the status of claims and Chock's offer of assistance in the investigation and disposition of claims; (2) failed to adopt

and implement reasonable standards for the prompt investigation of claims arising under the policies; and (3) did not attempt in good faith to effectuate fair and equitable settlements of claims submitted in which liability was reasonably clear, all said to be without good faith or just cause and with such frequency as to indicate "a general business practice at least as to Chock".

In essence, the claim is that Royal acted in violation of section 40-d of the Insurance Law in such a grievous manner as to warrant punitive damages.

In opposition to plaintiff's motion to dismiss, Chock submitted an affidavit asserting that Royal had no regular investigative procedure for interview of claimants, failed to obtain hospital reports and interview claimants' physicians, failed to pursue opportunities for reimbursement or apportionment, and instead billed Chock for the loss. The affidavit further asserted that as a consequence, reserves were required to be too high and to be maintained for periods after settlement of the claims. The affidavit was properly considered for the limited purpose of remedying defects in the counterclaim only (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636).

It is plain from this recital that these counterclaims basically constitute a damage action for breach of contract or possibly for negligence in handling claims, brought by an insured against its insurer, with the usual remedies and relief available in such actions. Nothing in the counterclaim or the supporting affidavit provides a basis for punitive damages, either on the basis of section 40-d of the Insurance Law or otherwise.

The enactment of section 40-d was clearly intended to empower "the Insurance Department to regulate claims settlement practices, and, based on an overall review of a company's practices, to impose sanctions where appropriate." (See Governor's memorandum on approval of the measure, NY Legis Ann, 1970, p 489.)

The order appealed from, granting discovery not sought, would put the insured in the place of the Insurance Department with free rein to explore the general business practices of the insurer vis-à-vis all of those insured by it, and

require plaintiff insurer to lay bare to defendant all of plaintiff's other insurance accounts and records. Nothing in this case or in the statute warrants such inquiry.

The gravamen of Chock's counterclaim is not that Royal engaged in unfair business practices (e.g., rejecting reasonable settlement offers), but rather that it supervised the Chock workers' compensation files in a negligent manner, granted claims in higher than necessary amounts, and failed to pursue possible approaches to obtain refunds of money.

In essence, Royal is charged with a failure properly to perform its contractual obligations. This is an insufficient basis on which to ground a claim for punitive damages, whether or not section 40-d of the Insurance Law imports a private action for damages. "Inasmuch as plaintiff's action is grounded upon private breach of contract, and does not seek to vindicate a public right or deter morally culpable conduct, punitive damages are not recoverable (e.g., *Trans-State Hay & Feed Corp. v Faberge, Inc.*, 35 NY2d 669, affg 42 AD2d 535; *Walker v Sheldon*, 10 NY2d 401, 404; see *Garrity v Lyle Stuart, Inc.*, 40 NY2d 354, 358). Contrary to plaintiff's argument *Gordon v Nationwide Mut. Ins. Co.* (30 NY2d 427, 436-437) and similar cases do not hold otherwise. There, the court indicated that an insured may recover damages in excess of policy limits when such damages stem from an insurer's bad faith refusal to settle a liability claim made by a third party. That principle can find no application where the insurer has terminated disability benefits allegedly payable to the insured, for there is no possibility of the insured being cast in damages which exceed policy limits by reason of the insurer's conduct." (*Halpin v Prudential Ins. Co. of Amer.*, 48 NY2d, at pp 907-908.)

The factual allegations in the counterclaim do not suggest such bad faith or morally culpable conduct. Like *Halpin* (*supra*), the cases treating attempts to recover punitive damages from insurance companies, where the insurance company has allegedly failed in bad faith to settle or pay a claim by its own insured, require a showing of something more than mere breach of contract, negligent or otherwise. There must be a showing of such morally

culpable conduct and wanton dishonesty as to imply a criminal indifference to civil obligations. "In order to prove an action for punitive damages against an insurance company, it is necessary to show that 'in its dealings with the general public [the insurance company], had engaged in a fraudulent scheme evincing such "a high degree of moral turpitude and * * * such wanton dishonesty as to imply a criminal indifference to civil obligations" (*Walker v. Sheldon,* 10 N Y 2d 401, 405).' (*Buttignol Constr. Co. v Allstate Ins. Co.,* 22 AD2d 689, affd 17 NY2d 476; *M. S. R. Assoc. v Consolidated Mut. Ins. Co.,* 58 AD2d 858; *Hubbell v Trans World Life Ins. Co. of N. Y.,* 70 AD2d 949). Plaintiffs' cause of action does not suggest that type of scheme and is therefore insupportable." (*Granato v Allstate Ins. Co.,* 70 AD2d 948, 949.)

In *Granato,* one Justice concurred on constraint, suggesting that the requirement for showing of fraud against the general public was no longer viable. However, it is notable that on the same date it decided the *Halpin* case, the Court of Appeals denied leave to appeal in *Granato* (48 NY2d 610). It is plain that a mere breach of a private contract in the nature of a policy of insurance simply does not support a claim for punitive damages (*Holoness Realty Corp. v New York Prop. Ins. Underwriting Assn.,* 75 AD2d 569, 570; *Buttignol Constr. Co. v Allstate Ins. Co., supra; M. S. R. Assoc. v Consolidated Mut. Ins. Co., supra*), even where the acts complained of are alleged to be willful and unjustified (*Waterview Catering Corp. v New York Prop. Ins. Underwriting Assn.,* 79 AD2d 973; *Catalogue Serv. of Westchester v Insurance Co. of North Amer.,* 74 AD2d 837, 838). Nor is the rule otherwise where the foundation of the claim is the exposure of the insured to liability for damages in excess of the policy limit by reason of the failure of the insurer to settle or pay third parties.

The rule is stated in *Gordon v Nationwide Mut. Ins. Co.* (30 NY2d 427, cert den 410 US 931). The Court of Appeals there noted (at pp 436-437):

"For breach of contract based only on a failure to make reasonable settlement of a claim within the policy limits, damages are measured by the policy limits. For a breach of implied conditions of the contract to act in its performance

in good faith in refusing to settle within the policy limits, the damages may exceed the policy limits.

"The punitive nature of damage for the bad faith breach of contract is a characteristic of the law of contracts generally, and is not a peculiarity alone of the contract of liability insurance. In every contract 'there exists an implied covenant of good faith and fair dealing' * * *

"But a punitive measure of damages is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract."

It has been held repeatedly that absent a showing of bad faith, no recovery of punitive damages may be obtained. It must appear that "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future." (*Walker v Sheldon,* 10 NY2d, at p 404; see, also, *Buttignol Constr. Co. v Allstate Ins. Co., supra; Sukup v State of New York,* 19 NY2d 519.)

There is here no facial or actual showing of "such a gross disregard of * * * contractual obligations as to constitute morally culpable conduct for which punitive damages might be claimed" (*Hubbell v Trans World Life Ins. Co. of N. Y.,* 50 NY2d 899, 901).

It is manifest that these counterclaims allege causes of action essentially for breach of contract, albeit Chock asserts its cause of action is for fraud. Thus Chock's reliance upon *Borkowski v Borkowski* (39 NY2d 982) is misplaced. As that case notes (at p 983), "It is not essential * * * that punitive damages be allowed in a fraud case only where the acts had been aimed at the public generally. Nevertheless, the proof in this case does not establish such gross, wanton, or willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages." It is notable that *Borkowski* was an action to set aside a fraudulent conveyance, a far cry from an action for breach of contract.

Even if the counterclaim in this action were to be deemed a counterclaim for fraud, and every allegation contained therein, as supplemented by the affidavit, were deemed to be true, there is still nothing alleged to show such gross, wanton or willful fraud or other morally culpable conduct sufficient to justify a claim for punitive damages (*Walker v Sheldon,* 10 NY2d, at pp 404-405).

■ Attorneys' fees are inappropriate in the absence of a valid claim for punitive damages or a contractual basis therefor. As the Court of Appeals noted in *Mighty Midgets v Centennial Ins. Co.* (47 NY2d 12), such expenses are recoverable only when the claiming insured has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations. Such is not the case here. Plaintiff's motive in bringing this action was not to cancel the policy, but rather to collect unpaid premiums and service charges.

■ Special Term erroneously granted defendant an opportunity to replead the counterclaim for punitive damages after further discovery. Nothing alleged provides a basis for such relief. There is no showing of a probability that discovery will yield a basis for a punitive damage claim. We note parenthetically that a demand for punitive damages has been held not to amount to a separate cause of action for pleading purposes (*Holoness Realty Corp. v New York Prop. Ins. Underwriting Assn., supra; Catalogue Serv. of Westchester v Insurance Co. of North Amer., supra; M. S. R. Assoc. v Consolidated Mut. Ins. Co., supra*).

The order, Supreme Court, New York County (WILLIAMS, J.), entered June 16, 1981, insofar as it granted plaintiff's motion to dismiss defendant's "Fifth Defense and Fourth Counterclaim" and to dismiss defendant's claims for attorneys' fees and for $5 million in punitive damages without prejudice to repleading after discovery, should be modified, on the law and the facts, to strike that portion of the order granting leave to replead, and as so modified, the order should be affirmed, without costs.

MURPHY, P. J., KUPFERMAN, CARRO and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on June 16, 1981, unanimously modified, on the law and the facts, to strike that portion of the order granting leave to replead, and as so modified, the order is affirmed, without costs and without disbursements.