ECCOBAY SPORTSWEAR,
INC., Plaintiff,

v.

PROVIDENCE WASHINGTON INSUR-
ANCE COMPANY, Defendant.

No. 83 Civ. 9341.

United States District Court,
S.D. New York.

May 22, 1984.

Stroock & Stroock & Lavan, New York
City, for plaintiff; Melvin A. Brosterman,
Naomi Siegel, New York City, of counsel.

Rein, Mound & Cotton, New York City,
for defendant; Eugene Wollan, Constanti-
no P. Suriano, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendant moves to dismiss plaintiff's
cause of action for punitive damages on the
ground that it fails to state a claim upon
which punitive damages can be granted.
Because both parties submitted affidavits
and other matters outside the pleadings,
the Court will treat the motion as one for
summary judgment, pursuant to Fed.R.
Civ.P. 12(b).

On May 4, 1982, defendant issued a sev-
en-day insurance binder for all-risk proper-
ty and transit coverage of certain of plain-
tiff's warehouses and other business prem-
ises. Four days later, plaintiff's Maspeth
warehouse allegedly was burglarized, and
plaintiff allegedly sustained a loss of $193,-
000. According to plaintiff, it submitted a
timely claim, and complied with all other
terms of the binder, but defendant did not
pay the loss, purportedly because it was
investigating the claim. After the investi-
gation had been pending for eighteen
months, plaintiff filed this action, seeking
compensatory damages for the loss, plus
punitive damages of $5 million. Defendant
moved to dismiss the claim for punitive
damages, but withdrew the motion when
plaintiff filed an amended complaint. The
amended complaint apparently was intend-
ed to address the arguments defendant
raised in its motion to dismiss. Defendant
now asserts, however, that even as amend-
ed, the complaint fails to state a claim for

which punitive damages can be granted under New York law.[1]

The amended complaint alleges that there was no basis in law or fact for the denial of plaintiff's claim; that defendant decided to deny the claim prior to, or early in, its purported investigation; that the investigation was designed to delay payment of monies defendant knew or should have known were owed to plaintiff; that defendant has a policy of undertaking protracted investigations in order to delay payment and force insureds to settle their claims for less than full value; that this policy is part of a fraudulent scheme upon the public on the part of defendant individually and in concert with others, including the General Cover Underwriting Association; and that defendant acted "in bad faith and with reckless indifference to its obligations."

 Under New York law, the mere breach of a contract of insurance does not support a claim for punitive damages, even if the acts complained of are alleged to have been willful and unjustified.[2] Instead, punitive damages are justified only upon "an extraordinary showing of disingenuous or dishonest failure to carry out a contract."[3] The New York courts routinely dismiss claims for punitive damages against insurance carriers when there has been no allegation or showing that the carrier, "in its dealings with the general public, had engaged in a fraudulent scheme evincing such 'a high degree of moral turpitude and ... such wanton dishonesty as to imply a criminal indifference to civil obligations.' "[4] Thus, what must be asserted and proved to sustain a prayer for punitive damages is "not an isolated transaction incident to an otherwise legitimate business, but a gross and wanton fraud upon the public."[5]

 Plaintiff's allegations fall short of these requirements. The amended complaint contains no allegations of "gross, wanton or willful fraud."[6] It alleges "reckless indifference to [defendant's] obligations under the policy," but does not go so far as to allege the required "criminal indifference."[7] Nor does the amended complaint allege that the defendant's conduct was "morally culpable, or ... actuated by evil and reprehensible motives."[8]

1. The parties agree that New York law applies to the dispute. The seven-day binder was issued in New York, and both the alleged loss and the alleged breach of contract took place here.

2. *Royal Globe Ins. Co. v. Chock Full O'Nuts Corp.,* 86 A.D.2d 315, 449 N.Y.S.2d 740 (1st Dep't 1982), *appeal dismissed,* 58 N.Y.2d 800, 459 N.Y. S.2d 266, 445 N.E.2d 649 (1983); *Marvex Processing & Finishing Corp. v. Allendale Mut. Ins. Co.,* 91 Misc.2d 683, 398 N.Y.S.2d 464 (Sup.Ct. 1977).

3. *Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 438, 334 N.Y.S.2d 601, 609, 285 N.E.2d 849, 854 (1972), *cert. denied,* 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973); *Dawn Frosted Meats, Inc. v. Insurance Co. of North America,* 99 A.D.2d 448, 470 N.Y.S.2d 624, 625 (1st Dep't 1984).

4. *Leidesdorf v. Fireman's Fund Ins. Co.,* 470 F.Supp. 82, 85 (S.D.N.Y.1979) (*quoting Buttignol Constr. Co. v. Allstate Ins. Co.,* 22 A.D.2d 689, 253 N.Y.S.2d 172, 173 (2d Dep't 1964); *Walker v. Sheldon,* 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 499 (1961)). *See also Hubbell v. Trans World Life Ins. Co.,* 50 N.Y.2d 899, 901, 430 N.Y.S.2d 589, 590, 408 N.E.2d 918, 919 (1980); *Royal Globe Ins. Co.,* 86 A.D.2d at 318–

19, 449 N.Y.S.2d at 744; *M.S.R. Assocs. Ltd. v. Consolidated Mut. Ins. Co.,* 58 A.D.2d 858, 396 N.Y.S.2d 684 (2d Dep't 1977).

5. *Walker v. Sheldon,* 10 N.Y.2d at 406, 223 N.Y. S.2d at 492, 179 N.E.2d at 499. *See also Holoness Realty Corp. v. New York Property Ins. Underwriting Ass'n,* 75 A.D.2d 569, 570, 427 N.Y. S.2d 264, 265–66 (1st Dep't 1980); *Marvex Processing & Finishing Corp.,* 91 Misc.2d at 685, 398 N.Y.S.2d at 466.

6. *Royal Globe Ins. Co.,* 86 A.D.2d at 320, 449 N.Y.S.2d at 744.

7. *Walker v. Sheldon,* 10 N.Y.2d at 405, 223 N.Y. S.2d at 491, 179 N.E.2d at 499; *Royal Globe Ins. Co.,* 86 A.D.2d at 319, 449 N.Y.S.2d at 743; *M.S.R. Assocs. Ltd.,* 58 A.D.2d 858, 396 N.Y.S.2d at 684; *Buttignol Constr. Co.,* 22 A.D. at 689, 253 N.Y.S.2d at 173.

8. *Walker v. Sheldon,* 10 N.Y.2d at 404, 223 N.Y. S.2d at 490, 179 N.E.2d at 498; *Dawn Frosted Meats,* 99 A.D.2d at 448, 470 N.Y.S.2d at 625; *Royal Globe Ins. Co.,* 86 A.D.2d at 319, 449 N.Y.S.2d at 744; *Cohen v. New York Property Ins. Underwriting Ass'n,* 65 A.D.2d 71, 77, 410 N.Y.S.2d 597, 601 (1st Dep't 1978).

Further, while the complaint alleges that defendant had a policy of engaging in protracted investigations, and that the policy is part of a fraud upon the public, those allegations are on information and belief and contain no supporting factual allegations. To sustain its claim for punitive damages, the plaintiff must do more than "resort to repetitive labels and meaningless verbiage"—plaintiff must set forth "sufficient evidentiary allegations of ultimate facts" pointing to a fraudulent scheme upon the public.[9]

Plaintiff submits an affidavit that "is not intended to provide evidentiary proof," but is submitted "only for the purpose of refuting the suggestion . . . that plaintiff does not have reasonable basis in fact" for requesting punitive damages. The affidavit states that the prayer for punitive damages is based on the "prior dealings of [plaintiff's] counsel with General Cover Underwriters Association," of which defendant is a member. According to counsel, he once represented another insured in an action against another insurer that also belonged to General Cover, and that insurer, too, denied the insured's claim after a protracted investigation. Counsel asserts that "the pattern followed in both [that] case and the instant action is indicative of a policy of delaying payment of just claims through protracted investigations and unjustified refusals to indemnify." The fact that another insurer once denied an insured's claims under circumstances similar to those plaintiff alleges here is hardly indicative of

a "far-flung fraudulent scheme, systematically conducted for profit" on the part of the defendant, notwithstanding the fact that both defendant and the other insurer belong to the same underwriting association.[10] Nor does the fact that plaintiff's counsel is of the belief that the other insurer's refusal to pay the claim of his other client "was in bad faith" supply the evidentiary allegations required to sustain a claim for punitive damages.

In sum, the plaintiff here has failed to allege conduct sufficiently egregious to justify punitive damages, and even assuming the truth of the allegations, it "appears beyond doubt that the plaintiff [could] prove no set of facts" that would entitle it to the punitive damages requested.[11] Plaintiff had one opportunity to amend its complaint after receiving notice of the defendant's objections to the punitive damages request; further leave to amend is not justified. The punitive damages claim therefore is dismissed with prejudice.[12]

So ordered.

9. *Holoness Realty Corp.*, 75 A.D.2d at 570, 427 N.Y.S.2d at 265–66. *See also Melito v. Interboro Mut. Indem. Co.*, 73 A.D.2d 819, 423 N.Y.S.2d 742 (4th Dep't 1979).

10. *Walker v. Sheldon*, 10 N.Y.2d at 406, 223 N.Y.S.2d at 492, 179 N.E.2d at 499.

11. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

12. This disposition makes it unnecessary to decide whether any prayer for punitive damages in a breach of contract action based on an alleged failure to pay a claim is barred by the rule stated by some New York courts that there is no private right of action for unfair claims practices by insurers, because "punishment is more properly within the province and jurisdiction of the State Superintendent of Insurance" pursuant to New York Ins. Law § 40–d (McKinney 1983). *Frizzy Hairstylists, Inc. v. Eagle Star Ins. Co.*, 93 Misc.2d 59, 403 N.Y.S.2d 389, 390 (App.Term 1977) (*per curiam*). *See also Dano v. Royal Globe Ins. Co.*, 59 N.Y.2d 827, 829, 464 N.Y.S.2d 741, 742, 451 N.E.2d 488, 489 (1983); *Hubbell*, 50 N.Y.2d at 901, 430 N.Y.S.2d at 590; *Halpin v. Prudential Ins. Co. of Am.*, 48 N.Y.2d 906, 908, 425 N.Y.S.2d 48, 49, 401 N.E.2d 171 (1979); *Cohen*, 65 A.D.2d at 78–79, 410 N.Y.S.2d at 602.