**Alan RAPHAEL, Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant.**

**No. 90 Civ. 0938 (RPP).**

United States District Court,
S.D. New York.

Sept. 4, 1990.

Solinger Grosz & Goldwasser, P.C. by John C. Grosz, New York City, for plaintiff.

Feldman & Rudy by Stuart D. Markowitz, Roslyn Heights, N.Y., for defendant.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Craig A. Stewart, Asst. U.S. Atty., of counsel), New York City, for the Government.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff sues for breach of an insurance contract involving an alleged car theft. Defendant now moves pursuant to Fed.R. Civ.P. 12(b)(6), 12(c) and 12(h)(2) to dismiss the complaint insofar as it seeks $500,000 in punitive damages and any attorney's fees. The Government has intervened requesting an order quashing the subpoenas served by plaintiff on the Federal Bureau of Investigation ("FBI") and Special Agent Beekman or, in the alternative, an order staying discovery pending resolution of an ongoing criminal investigation. For the reasons set forth below, defendant's and the Government's motions are granted. The complaint is dismissed pursuant to Fed.R.Civ.P. 12(h)(3) for failure to meet the amount in controversy requirement.

## BACKGROUND

On September 5, 1989, plaintiff alleges he discovered the theft of his 1987 black Jaguar, four-door sedan, Model XJ6 Vandem Plas. According to his deposition testimony, he last saw the vehicle on Friday, September 1, 1989, around 10:00 a.m. when he parked it across the street from his girlfriend's apartment located in Yonkers, New York. When he returned to Yonkers on the morning of Tuesday, September 5, 1989, to pick up the car, it was missing. The record does not disclose why he failed to use his car over the entire Labor Day weekend.

On September 5, plaintiff reported the theft to the Yonkers Police Department and to his insurer, Aetna. Two days later, plaintiff filed a statement of loss with Aetna claiming a loss of $46,827.60, equivalent to the purchase price of the Jaguar. Grosz Aff., Exh. C.

Aetna assigned investigator Donald Pisculli to the claim. By letter dated November 7, 1989, Aetna disclaimed all coverage under plaintiff's policy for loss of the Jaguar, stating, "Our investigation has determined discrepancies in the reported disappearance of your vehicle." Grosz Aff., Exh. D. At his deposition on May 10, 1990, Pisculli revealed that the basis for denying the claim was information provided to him by FBI Special Agent Mary Ellen Beekman. Pisculli Dep., Tr. at 58.

Beekman essentially informed Aetna that she had observed the Jaguar on September 1, 1989, at a garage located in the vicinity of 102nd Street and Tenth Avenue in Manhattan and that the vehicle was driven to Florida the following day, September 2, 1989, in connection with a "Dominican car theft ring." Grosz Aff. ¶ 7. Beekman had also learned from an informant facts suggesting that the vehicle may have been present at the garage for eight days prior to September 2, 1989, and that the car had been delivered as an "insurance give-up." *Id.* at ¶ 7.

Plaintiff Alan Raphael was subsequently indicted under seal by a federal grand jury on July 13, 1990, "for conduct that was the subject of the [FBI] investigation...." Maloney Supp.Decl. ¶ 2.

The parties agreed to waive oral argument on the Government's motion to quash the subpoenas.

## DISCUSSION

### MOTION TO QUASH

Plaintiff has served subpoenas on the Federal Bureau of Investigation and Special Agent Beekman seeking production of:

1. Each document relating or referring to the Jaguar, including: (a) all notes and memoranda relating or referring to the observation of the Jaguar by Beekman, the F.B.I., or any informant, on or about September 1, 1989 or at any time prior thereto; and (b) all notes and memoranda comprising, relating or referring to each communication with any person, or to any investigation, concerning the whereabouts of the Jaguar at any time after August 15, 1989.

2. Each document relating or referring to any investigation by Beekman or the F.B.I. concerning the Jaguar and/or Raphael.

3. Each document relating or referring to each communication between or among Beekman, the F.B.I., any informant and Aetna concerning the Jaguar and/or Raphael.

Beekman Decl., Exh. 1. The Government argues that enforcement of the subpoenas would compromise an ongoing criminal investigation of a major interstate automobile theft ring operating out of New York. The investigation is being conducted by FBI Agent Beekman in conjunction with the United States Attorney's Office for the Southern District of New York. A federal grand jury has indicted several persons including plaintiff in connection with the activities being investigated.

### 1. *Law Enforcement Investigatory Privilege*

█ The law enforcement investigative privilege, a qualified common law privilege under Fed.R.Civ.P. 26(b), exists to prevent "the harm to law enforcement efforts which might arise from public disclosure of ... investigatory files." *Black v. Sheraton Corp.*, 564 F.2d 531, 541 (D.C.Cir.1977). *See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C. Cir.1984); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir.1981). The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals under investigation and to prevent interference with the investigation. *In re Department of Investigation of New York*, 856 F.2d 481, 484 (2d Cir. 1988). Law enforcement operations have little hope of being effective if conducted in full public view.

█ When the government invokes the law enforcement investigative privilege, the court must balance the public interest in nondisclosure against the need of the particular litigant for access to the privi-

leged information. *Black v. Sheraton Corp.*, 564 F.2d at 545–547. The litigant's need is particularly strong where the litigant has no other means of obtaining the information. *See Kinoy v. Mitchell*, 67 F.R.D. 1, 12 (S.D.N.Y.1975). However, in this case, the Aetna investigator revealed at his deposition the substance of his conversations with Special Agent Beekman and how they influenced his decision to deny the claim. Any further disclosure of F.B.I. investigatory records threatens to compromise Agent Beekman's investigative procedures and the identity of the informants who provided her with information. It is clear to the Court that the requested records have a direct bearing on the ongoing F.B.I. car theft ring investigation, and therefore are not discoverable at this time in this civil action.

### 2. *Criminal Prosecution*

■ Where discovery documents are sought in connection with civil litigation while a criminal prosecution arising from the same facts is pending, courts will not permit the defendant to circumvent the restrictions placed upon criminal discovery by attempting to compel disclosure in the civil case. *Campbell v. Eastland*, 307 F.2d 478 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); *United States v. One 1964 Cadillac Coupe De-Ville,* 41 F.R.D. 352, 354 (S.D.N.Y.1966). The court must determine the extent to which the civil discovery threatens the secrecy and integrity of the criminal proceedings, and, if the discovery could prove intrusive, whether to stay discovery entirely or to limit discovery so as not to impinge upon the criminal proceedings. *See Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 381 (D.D.C.1977). The pertinent factors to consider include: (1) whether broad disclosure of the prosecution's case may lead to perjury and manufactured evidence; (2) whether disclosure of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the possibility that criminal defendants may surprise the prosecution at trial with information developed through the civil discovery, while the defendant's

privilege against self-incrimination would effectively block any attempts by the Government to discover relevant evidence from the defendants. *Id.*

■ It is clear that Raphael cannot obtain discovery of the records of Special Agent Beekman in the criminal proceeding against him under Fed.R.Crim.P. 16(a)(2) which prohibits discovery by criminal defendants of "internal government documents made by ... government agents in connection with the investigation or prosecution of the case." Moreover, disclosure of Agent Beekman's records may lead to intimidation or interference with the confidential informants who may be witnesses in the criminal proceeding. The Court concludes that the Government's interest in protecting the secrecy and integrity of its criminal proceeding outweighs plaintiff's need for the information sought in this case. Accordingly, the Court hereby grants the Government's motion to quash the subpoenas.

## MOTION TO DISMISS

In order to survive a motion to dismiss, a claim for punitive damages against a first-party insurer must contain "sufficient evidentiary allegations of ultimate facts of a fraudulent and deceitful scheme in dealing with the general public as to imply a criminal indifference to civil obligations." *Holoness Realty Corp. v. New York Property Ins. Underwriting Ass'n,* 427 N.Y.S.2d 264 (App.Div.1980). *See, e.g., Cook v. Hartford Fire Ins. Co.,* 469 N.Y.S.2d 4, 97 A.D.2d 731 (App.Div.1983); *Granato v. Allstate Ins. Co.,* 418 N.Y.S.2d 108, 70 A.D.2d 948 (App.Div.), *appeal denied,* 48 N.Y.2d 610, 425 N.Y.S.2d 1025, 401 N.E.2d 221 (1979).

■ The mere breach of a contract of insurance does not support a claim for punitive damages, even if the breach is alleged to have been willful and unjustified. *Avnet, Inc. v. American Motorists Ins. Co.,* 684 F.Supp. 814 (S.D.N.Y.1988); *Eccobay Sportswear, Inc. v. Providence Washington Ins. Co.,* 585 F.Supp. 1343 (S.D.N.Y. 1984).

Thus, New York courts routinely dismiss claims for punitive damages against insurers where no fraud upon the public amounting to wanton dishonesty and extreme moral turpitude is alleged. *Eccobay Sportswear,* 585 F.Supp. at 1344; *Leidesdorf v. Fireman's Fund Ins. Co.,* 470 F.Supp. 82, 85 (S.D.N.Y.1979) (granting summary judgment where the only fact alleged was that the insurers had refused to pay a claim after demand was made).

■ In this case, plaintiff first complains that Aetna refused to provide him with any explanation for denial of his claim beyond that stated in the November 7 letter. Insofar as this claim relates only to Aetna's dealings with plaintiff and contains no facts relating to Aetna's treatment of other claimants or the general public, it fails to allege the type of misconduct that would support a demand for punitive damages.

■ Plaintiff next complains about inclusion in the November 7 letter of language stating:

any person who knowingly and with intent to defraud any Insurance Company or other persons files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The Aetna investigator for plaintiff's claim stated at his deposition that he included such language in every declaration letter he sent out whether or not there was reason to suspect fraud. Pisculli Dep., Tr. at 117. Plaintiff argues that this language demonstrates a "fraudulent and deceitful scheme in dealing with the general public," *Holoness Realty, supra,* by discouraging insurance claimants from asserting their rights. Plaintiff's argument is misplaced. All insurance carriers are required by New York law to include such language in "[a]ll applications for commercial insurance and all claim forms." [1] N.Y. Ins. Law § 403(c). Aetna's decision to repeat the language in letters to policyholders cannot be said to

"imply a criminal indifference to civil obligations" sufficient to justify awarding punitive damages.

■ While the complaint alleges at paragraph 18 that defendant has engaged in a fraudulent scheme evincing a high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to civil obligations, those allegations are on information and belief and contain no supporting factual allegations. In condemning this practice, the court stated in *Eccobay Sportswear:*

"To sustain its claim for punitive damages, the plaintiff must do more than 'resort to repetitive labels and meaningless verbiage'—plaintiff must set forth 'sufficient evidentiary allegations of ultimate facts' pointing to a fraudulent scheme on the public."

585 F.Supp. at 1345 (citations omitted). There are no facts to indicate that Aetna did anything but deny a claim under suspicious circumstances. The conclusion that defendant's refusal to pay the claim was based upon substantial doubt as to its validity, and not malice or bad faith, is further supported by plaintiff's subsequent criminal indictment. In light of this development, Aetna's suspicion that the vehicle's disappearance was not due to theft appears well-founded.

■ Finally, allegations in the complaint accusing Aetna of engaging in unfair claim settlement practices in violation of N.Y. Ins. Law § 2601 will not support a claim for punitive damages. *See Halpin v. Prudential Ins. Co.,* 48 N.Y.2d 906, 425 N.Y.S.2d 48, 401 N.E.2d 171 (1979); *Roldan v. Allstate Ins. Co.,* 544 N.Y.S.2d 359, 374, 149 A.D.2d 20 (1989); *Cosmopolitan Mutual Ins. Co. v. Nassau Ins. Co.,* 99 Misc.2d 1018, 417 N.Y.S.2d 835 (1979).

In sum, under the facts of this case and well-established principles of New York law, plaintiff is not entitled to punitive damages in this action. It is also well-settled in New York that attorney's fees are

---

1. Identical language appeared at the bottom of the claim form signed and submitted by plaintiff on September 12, 1989. Grosz Aff., Exh. C.

not appropriate in actions by an insured to enforce its rights, but only where the insured is sued by the insurer in an effort to free itself from its policy obligations. *National Grace Mutual Ins. Co. v. Continental Casualty Ins. Co.*, 650 F.Supp. 1404, 1414 (S.D.N.Y.1986); *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979). Accordingly, plaintiff's claims for punitive damages and attorneys fees are dismissed.

RULE 12(h)(3)

Having dismissed plaintiff's punitive damages claims, it appears from the complaint that the only remaining claim is for breach of a contract of insurance under which plaintiff alleges a loss of $46,827.60, the value of the Jaguar at the time of its alleged theft as well as its purchase price. Since jurisdiction in this case is founded upon diversity of citizenship, the remaining claim fails to meet the requirement that the amount in controversy exceed $50,000. 28 U.S.C. § 1332(a). Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, the plaintiff's case is dismissed for lack of subject matter jurisdiction. *See, e.g., Boyle v. Readers' Subscription Inc.*, 481 F.Supp. 156 (S.D.N.Y.), *aff'd mem.*, 614 F.2d 1285 (2d Cir.1979).

SO ORDERED.