■ CARAT DIAMOND CORPORATION, Respondent-Appellant, v UNDERWRITERS AT LLOYD'S, LONDON, et al., Appellants-Respondents. CARAT DIAMOND CORPORATION, Respondent-Appellant, v UNDERWRITERS AT LLOYD'S, LONDON, et al., Appellants-Respondents, et al., Defendants.—Order, Supreme Court, New York County (Harold Baer, Jr., J.), entered July 12, 1985, which, *inter alia,* denied defendants-appellants-respondents' motion for summary judgment dismissing the complaint in action No. 1 and the second cause of action in the amended complaint in action No. 2, unanimously reversed to the extent appealed from, on the law, with costs, the motion granted and the complaints dismissed as against defendants-appellants-respondents.

Plaintiff had been insured under a jeweler's block policy issued by Underwriters At Lloyd's, London, for the one-year period from September 12, 1981 through September 12, 1982.

The policy provided, "No suit, action or proceeding for the recovery of any claim under this Policy shall be sustained in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Assured of the occurrence which gives rise to the claim."

On November 4, 1981, plaintiff sustained a loss of jewelry by theft in California and submitted a claim under the policy in the sum of $110,000. On December 14, 1981, there was a separate loss in Michigan, also by theft, in the sum of $8,800. In connection with the investigation of the November 1981 loss, plaintiff executed a standard nonwaiver agreement on December 8, 1981, providing that any action by the insurer in investigating the loss "shall not waive or invalidate any of the terms or conditions of any policy or policies and shall not waive or invalidate any rights whatever of either of the parties to this agreement." By letter January 25, 1982, the insurer demanded that plaintiff submit to an examination under oath (EUO) and, stated that by calling for the examination it "does not waive any provision or stipulation of the said policy or any forfeiture thereof, nor does it waive any of its rights thereunder." The EUO, originally scheduled to be held March 2, 1982, was adjourned on consent, with the last adjournment to June 8, 1982, on which date the examination was held.

Prior to the examination, Underwriters' counsel advised plaintiff on April 29, 1982, that they had received the file dealing with the second loss, and intended to conduct one examination with respect to both claims. Thereafter, on August 12 and 16, plaintiff's attorneys wrote to inquire as to the status, respectively, of the December 14 and November 4 claims—in the August 16, 1982 letter, complaining that the matter had been "dragging for some time" and stating, "If we do not hear from you within a reasonable time, we will be forced to bring suit." This crossed with appellants' letter of August 16, 1982, responding to plaintiff's August 12th letter, that counsel could not make a recommendation until the transcript of the examination had been executed and returned. Subsequently, on October 1, 1982, the insurer agreed to and did pay the smaller, second claim in November 1982.

Action No. 1 was commenced on November 23, 1982, to recover for the loss sustained on November 4, 1981. Action No. 2, instituted May 4, 1983, contained a first cause of action for the identical relief and a second cause of action on a general allegation of unfair claims settlement practices as a result of Underwriters' protracted processing of the claim. The

answers alleged, *inter alia,* that the actions were barred by the 12-month contractual period of limitations provided for in the policy. Thereafter, Special Term denied appellants' motion for summary judgment, concluding that there were factual issues as to whether Underwriters had waived or was estopped from invoking the limitations period in the policy. It also found factual issues raised by plaintiff's assertion that the insurer had consolidated the two claims by conducting a joint EUO, with the result that the 12-month limitations period was extended on the first claim to one year from the date of the later loss.

We disagree and, on this record, find no factual issues for trial. Parties, by agreement, may provide for a shorter limitations period than that prescribed by law, which is enforceable, provided it is reasonable and in writing *(Kassner & Co. v City of New York,* 46 NY2d 544, 550-551; CPLR 201). Contrary to plaintiff's contention, the 12-month limitations period in a policy has been found to be a reasonable, valid and enforceable provision *(Bargaintown, D.C. v Bellefonte Ins. Co.,* 54 NY2d 700, *affg* 78 AD2d 206; *Proc v Home Ins. Co.,* 17 NY2d 239).

Plaintiff claims that the insurer has waived or should be estopped from relying upon the contractual limitations period by its delay in accepting or rejecting the claim within the 12-month period after the loss. On this record, we find no merit to this position, which is contrary to established authority. *(See, Graziane v Firemen's Ins. Co.,* 63 AD2d 1087; *Fotochrome, Inc. v American Ins. Co.,* 26 AD2d 634, *affd* 23 NY2d 889; *Rosenthal v Reliance Ins. Co.,* 25 AD2d 860; *Skylark Enters. v American Cent. Ins. Co.,* 13 AD2d 707.)

Our examination of the undisputed facts in the record fails to disclose any evidence that appellants lulled plaintiff into inactivity sufficient for a waiver or estoppel. The nonwaiver agreement reserved all the insurer's rights and was reiterated in counsel's letter demanding an examination under oath. The record does not support plaintiff's claim that this language was intended only to preserve the carrier's unattended automobile defense. There are no allegations of any representations or conduct by the insurer to mislead plaintiff into believing that the time limitation in the policy would not be invoked.

To the contrary, although not dispositive, the record affirmatively establishes that plaintiff was well aware of the short limitations period in the policy. The insured's letter of August

16 included a threat to institute suit if a decision on the claim was not made "within a reasonable time". In addition, plaintiff's president admitted, in his affidavit submitted in opposition to the motion, that "our attorneys apparently panicked and endeavored to start an eleventh hour lawsuit" prior to expiration of the limitations period, but failed to effect service until November 23, 1982, which was untimely in that it was beyond the contractual 12-month limitations period. There was nothing to prevent plaintiff from the timely institution of suit and, plainly, the insured slept on its rights and was not lulled into a false sense of security by any conduct of the insurer. *(See, Fotochrome, Inc. v American Ins. Co., supra; Rosenthal v Reliance Ins. Co., supra.)*

The situation here is quite distinct from that in *Gilbert Frank Corp. v Federal Ins. Co.* (91 AD2d 31), where, after the limitations period had expired, the insurer continued to subject the insured to extensive meetings and discussions and a protracted review of books and records to ascertain the full extent of the loss. Under those circumstances, we held the facts in that case did raise a factual issue as to waiver by the insurer of the time limitation in the policy (91 AD2d, at pp 35-36).

Nor is there any merit to plaintiff's alternate claim that the insurer, by conducting one examination under oath as to both claims, thereby consolidated the claims and extended the contractual limitations period with respect to the November 4, 1981 loss to the later date of the second loss. The insurer's April 29, 1982 letter is clear and unambiguous and did not effect a consolidation for limitations purposes. All the insurer sought was one examination for both claims. Similarly unambiguous was the August 16, 1982 letter, wherein counsel simply stated that no opinion or recommendation would be made until the transcripts of the examination had been executed and returned. Neither letter effected a joinder of the claims for limitations purposes.

Equally lacking in merit is the second cause of action in action No. 2. There are only general allegations of unfair claims settlement practices which are unsubstantiated on this record. Furthermore, it was not established that the defendants conducted an unauthorized insurance practice in New York. Insurance Law § 2105 authorizes excess or surplus line brokers to procure certain insurance policies from nonauthorized insurers, like Underwriters. While there may be a question as to whether Insurance Law § 2601 (formerly Insurance Law § 40-d) authorizes a private right of action *(see, Royal*

*Globe Ins. Co. v Chock Full O'Nuts Corp.,* 86 AD2d 315, 318), no such claim has been interposed here.

Moreover, the record does not support plaintiff's general assertion of unfair claims settlement practices. To the extent there was any delay in the conduct of the examination under oath, the adjournments were not lengthy or unreasonable and were on consent. In any event, the examination was completed almost five months prior to expiration of the limitations period. In opposing the motion, it was incumbent upon plaintiff to lay bare affirmative proof to substantiate its claim. This it failed to do. Furthermore, the only charge against the insurer is its alleged failure to perform under the contract, plainly an insufficient basis on which to ground a claim for punitive damages *(see, Royal Globe Ins. Co. v Chock Full O'Nuts Corp., supra; cf. Samovar of Russia Jewelry Antique Corp. v Generali Gen. Ins. Co.,* 102 AD2d 279). Concur—Sandler, J. P., Carro, Fein, Kassal and Ellerin, JJ.