AXA Winterthur Ins. Co. v Transvalue, Inc. (2018 NY Slip Op 01152)





AXA Winterthur Ins. Co. v Transvalue, Inc.


2018 NY Slip Op 01152


Decided on February 20, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 20, 2018

Acosta, P.J., Friedman, Andrias, Webber, Gesmer, JJ.


4132 650507/11

[*1]AXA Winterthur Insurance Co., Plaintiff-Respondent,
v
Transvalue, Inc., et al., Defendants-Appellants.


White Fleischner & Fino, LLP, New York (Mitchell L. Shadowitz of counsel), for appellants.
Hill Rivkins LLP, New York (John J. Sullivan of counsel), for respondent.



Order and judgment (one paper), Supreme Court, New York County (Debra A. James, J.), entered February 29, 2016, which, inter alia, denied defendants' motion for summary judgment on their counterclaims, and granted plaintiff's motion for summary judgment dismissing the counterclaims and declaring, inter alia, that plaintiff has no obligation under an insurance policy issued to nonparty RCX, Inc. to compensate defendants for the loss of a shipment being transported by RCX, and so declared, unanimously affirmed, with costs.
On January 28, 2017, RCX, an armored car company, accepted from defendant Transvalue, Inc., a freight carrier, five packages of gold jewelry for transport from John F. Kennedy International Airport to Transvalue's customer in Mt. Vernon, New York. The shipment was stolen from the armored car. Defendant Certain Interested Underwriters at Lloyds (Lloyds), which had issued Transvalue a first-party insurance policy covering the jewelry, paid Transvalue $732,198.98 for the loss, which excluded a $25,000 deductible absorbed by Transvalue. Thereafter, Lloyds, as Transvalue's subrogee, obtained a default judgment against RCX, entered in federal district court in June 2010, for the amount Lloyds had paid Transvalue for the lost jewelry, plus prejudgment interest, costs and disbursements, in the total amount of $956,044.70. The default judgment against RCX remains unsatisfied.
In February 2011, plaintiff AXA Winterthur Insurance Company (AXA), whose predecessor in interest had issued a marine cargo insurance policy to RCX that was in effect at the time of the loss (the RCX policy), commenced this action against Transvalue and Lloyds. AXA seeks a declaration that it is not obligated, under the RCX policy, to insure RCX's liability to Lloyds or Transvalue. Lloyds and Transvalue answered and asserted counterclaims. On the parties' competing motions for summary judgment, Supreme Court granted AXA summary judgment declaring that it has no obligation under the RCX policy to compensate Lloyds or Transvalue for the loss of the shipment or for the unsatisfied default judgment against RCX. For the following reasons, we affirm.
The RCX policy provided that "[i]n consideration of the premium paid hereon, the underwriters will indemnify the assured in respect of loss of, or damage to, the property herein mentioned," which it described as "principally, but not limited to cash and or Jewellry [sic] and/or valuable papers and all other interest in relation to the assureds [sic] business."
Shipments were covered — "[f]rom time of leaving premises of sender, until delivered to the premises of the consignee" — against "all risks of physical loss and/or damage of whatsoever nature." The basis of valuation for a shipment was "[a]s declared by the insured." With respect to declarations, the policy further provided:
"This policy is subject to a daily declaration of all shipments to SJ International Brokers [SJ] and/or HSBC Insurance Brokers Limited [HSBC]. The assured is required to report all shipments to underwriters at the end of each month in a uniform format agreed by underwriters, if the assured deliberately fails to report shipments and/or deliberately falsifies any of the required pertinent details of [*2]shipments, the insurers have the option to declare the policy null and void ab initio."
Finally, the RCX policy contained a contractual time bar requiring that any lawsuit be filed within "twelve (12) months next after discovery by the assured of occurrence which gives rise to the claim."
Defendants argue that because the RCX policy covers "all risks," it requires AXA to indemnify them for the subject loss, absent an applicable exclusionary provision. Defendants maintain that the trial court incorrectly narrowed the scope of this all-risk coverage when it failed to recognize that RCX's liability to third parties come within the broad scope of "other interest in relation to the assureds [sic] business" in the definition of covered property, and incorrectly placed the burden on defendants to point to a provision specifying that the insurer agreed to insure RCX's liability to third parties. We find it unnecessary to determine whether Transvalue (or Lloyds, as Transvalue's subrogee) would have any rights against AXA under the RCX policy for the loss of a properly declared shipment in a timely- commenced suit, because the record establishes that there was no compliance with the policy's requirements for declaration of the shipment and for timely commencement of a lawsuit on the claim.
Defendants argue that because the "WHERE COVERED" clause states that property was covered "[f]rom [the] time of leaving [the] premises of [the] sender, until delivered to the premises of the consignee," the RCX policy automatically covered the shipment from the time it was delivered to RCX, regardless of whether RCX declared it or reported it. However, as previously noted, the RCX policy contained a provision (quoted above) requiring "daily declaration of all shipments" to specified brokers (SJ and/or HSBC). AXA's former underwriter states in an affidavit that this clause made the policy a declarations-only policy, which required RCX to declare to AXA, through its brokers, the particular shipments it intended to insure for its customers in order for coverage to exist. While the underwriter also testified that the RCX policy would indemnify "RCX in the case of a claim made by a customer who has requested insurance under the RCX cover," and that the insurer "would indemnify the customer who requested insurance," the record establishes that RCX deliberately chose not to declare the subject shipment because Transvalue (RCX's customer) had purchased insurance for the cargo from Lloyds.
Emails in the record show that, on January 30, 2007 (two days after the loss), RCX advised HSBC, with a copy to SJ, that the shipment had been lost. HSBC asked RCX to "confirm if you require us to present this to Underwriters for their review and comment?" SJ, which was RCX's agent, replied:
"There was no insurance taken or placed by RCX for the Transvalue shipment for Michael Anthony. The request for RCX to pick up the order had a zero declared value on it. As such[,] it was not insured by RCX, and there is no exposure to Underwriters [AXA] in this matter. A claim has been submitted to the insurers of Transvalue and they are investigating their claim. . . ."
On February 5, 2007, HSBC forwarded this correspondence to AXA to inform it that RCX would not be declaring the shipment as covered and that it did not have to consider a claim. Moreover, because, with respect to the shipment at issue, Transvalue was acting as principal, with RCX as agent, the RCX policy's limited extension of coverage to Transvalue while acting as agent for RCX in Miami does not apply. Contrary to defendants' contention, the requirement to make declarations was an affirmative obligation placed on RCX, and RCX's admitted failure to declare the subject shipment entitled plaintiff's predecessor to void the coverage (see Matco Prods. v Boston Old Colony Ins. Co., 104 AD2d 793 [2d Dept 1984]).
In any event, even if the shipment had been declared, defendants cannot escape the RCX policy's contractual limitation period for bringing suit. The record establishes that Transvalue knew of the existence of the RCX policy, as it alleges in its counterclaims that the "EVIDENCE OF INSURANCE" was delivered to it in February 2006. Still, no suit was brought within one year of the loss as required by the policy. Under these circumstances, plaintiff cannot seek the [*3]benefit of the coverage provided by the policy without being subject to the one-year limitation period provided by the policy, which is reasonable and, therefore, enforceable (see Hirshfeld v Maryland Cas. Co., 249 AD2d 274, 275 [2d Dept 1998]; Carat Diamond Corp. v Underwriters At Lloyd's, London, 123 AD2d 544, 546 [1st Dept 1986]; Diamond Lease [USA], Inc. v Travelers Indem. Co., 6 Misc 3d 1013[A] [Sup Ct, NY County 2004]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 20, 2018
CLERK